PRISONER'S CIVIL RIGHTS COMPLAINT (Rev. 05/2015)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE __NORTHERN__ DISTRICT OF TEXAS
## __WICHITA__ DIVISION

James E. Sanders #1579328
_____
Plaintiff's Name and ID Number

James V. Allred Unit
_____
Place of Confinement

v.

Kristen Gibson
PO Box 99, Huntsville, TX 77342
_____
Defendant's Name and Address

Ingrid Y. Ward
2101 FM 369N, Iowa Park, TX 76367
_____
Defendant's Name and Address

Bryan D. Reitsma
2101 FM 369N, Iowa Park, TX 76367
_____
Defendant's Name and Address
( DO NOT USE "ET AL.")



**7-23CV-009-0**

CASE NO._____
(Clerk will assign the number)

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

JAN 3 1 2023

CLERK, U.S. DISTRICT COURT
By_____
         Deputy

---

## INSTRUCTIONS - READ CAREFULLY

**NOTICE:**

**Your complaint is subject to dismissal unless it conforms to these instructions and this form.**

1.  To start an action you must file an original and one copy of your complaint with the court. You should keep a copy of the complaint for your own records.

2.  Your complaint must be legibly handwritten, in ink, or typewritten. You, the plaintiff, must sign and declare under penalty of perjury that the facts are correct. If you need additional space, **DO NOT USE THE REVERSE SIDE OR BACKSIDE OF ANY PAGE.** ATTACH AN ADDITIONAL BLANK PAGE AND WRITE ON IT.

3.  You must file a separate complaint for each claim you have unless the various claims are all related to the same incident or issue or are all against the same defendant, Rule 18, Federal Rules of Civil Procedure. Make a short and plain statement of your claim, Rule 8, Federal Rules of Civil Procedure.

4.  When these forms are completed, mail the original and one copy to the clerk of the United States district court for the appropriate district of Texas in the division where one or more named defendants are located, or where the incident giving rise to your claim for relief occurred. If you are confined in the Texas Department of Criminal Justice, Correctional Institutions Division (TDCJ-CID) , the list labeled as "VENUE LIST" is posted in your unit law library. It is a list of the Texas prison units indicating the appropriate district court, the division and an address list of the divisional clerks.

Jessica Back
1060 HWY 190E, Huntsville, TX 77340

Patrick L. O'Daniel
PO Box 13084, Austin, TX 78711

Oscar Mendoza
PO Box 99, Huntsville, TX 77342

Bobby Lumpkin
PO Box 99, Huntsville, TX 77342

M. Barthela (Identity is tentative & employment status unknown)


Angela N. Davis
2101 FM 369N, Iowa Park, TX 76367

Tina S. Vitolo
2101 FM 369N, Iowa Park, TX 76367

David L. Ivey
2101 FM 369N, Iowa Park, TX 76367

Ruth E. Schroyer
2101 FM 369N, Iowa Park, TX 76367

Cody A. Wolfrum (Address unknown--No longer employed by TDCJ)


Jimmy S. Smith
2101 FM 369N, Iowa Park, TX 76367

David Blackwell
965 Ofstie St., Beeville, TX 78102

Stephen Bryant
304 W. 6th St., Plainview, TX 79072

Brandon D. Dishman
2101 FM 369N, Iowa Park, TX 76367

Timothy S. Hooper
2101 FM 369N, Iowa Park, TX 76367

Kristen L. Rasmussen
2101 FM 369N, Iowa Park, TX 76367

Aaron M Newell
2101 FM 369N, Iowa Park, TX 76367

Jessica Riley
1060 HWY 190E, Huntsville, TX 77340

Marla Norsworthy
PO Box 99, Huntsville, TX 77342

Traci R. Cooke
2101 FM 369N, Iowa Park, TX 76367

Gregory S. Hicks, (currently listed as) Law Librarian III, Allred
2101 FM 369N, Iowa Park, TX 76367

1. In order for your complaint to be filed, it must be accompanied by the statutory filing fee of $350.00 plus an administrative fee of $50.00 for a total fee of **$400.00.**

2. If you do not have the necessary funds to pay the fee in full at this time, you may request permission to proceed *in forma pauperis.* In this event you must complete the application to proceed *in forma pauperis*, setting forth information to establish your inability to prepay the fees and costs or give security therefor. You must also include a current six-month history of your inmate trust account. If you are an inmate in TDCJ-CID, you can acquire the application to proceed *in forma pauperis* and the certificate of inmate trust account, also known as *in forma pauperis* data sheet, from the law library at you prison unit.

3. The Prison Litigation Reform Act of 1995 (PLRA) provides "... if a prisoner brings a civil action or files an appeal *in forma pauperis,* the prisoner shall be required to pay the full amount of a filing fee." *See* 28 U.S.C. § 1915. Thus, the court is required to assess and, when funds exist, collect, the entire filing fee or a initial partial filing fee and monthly installments until the entire amount of the filing fee has been paid by the prisoner. If you submit the application to proceed *in forma pauperis*, the court will apply 28 U.S.C. § 1915 and, if appropriate, assess and collect the entire filing fee or an initial partial filing fee, then monthly installments from you inmate trust account, until the entire $350.00 statutory filing fee has been paid. (The $50.00 administrative fee does not apply to cases proceeding *in forma pauperis.)*

4. If you intend to seek *in forma pauperis* status, do not send your complaint without an application to proceed *in forma pauperis* and the certificate of inmate trust account. Complete all essential paperwork before submitting it to the court.

**CHANGE OF ADDRESS**

It is your responsibility to inform the court of any change of address and its effective date. Such notice should be marked **"NOTICE TO THE COURT OF CHANGE OF ADDRESS"** and shall not include any motion for any other relief. Failure to file a NOTICE OF THE COURT OF CHANGE OF ADDRESS may result in the dismissal of your complaint pursuant to Rule 41(b), Federal Rules of Civil Procedure.

I.   PREVIOUS LAWSUITS:

    A. Have you filed *any* other lawsuit in state or federal court relating to your imprisonment? <u>X</u> YES ___ NO

    B. If your answer to "A" is "yes", describe each lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, giving the same information.)

        1. Approximate date of filing lawsuit: <u>February 4, 2021</u>

        2. Parties to previous lawsuit:
            Plaintiff(s) <u>James E. Sanders</u>
            Defendant(s) <u>Maria E. Muirhead, Elbert Holmes, Glenda J. Adams, et al.</u>

        3. Court: (If federal, name the district; if state, name the county.) <u>Northern District of Texas</u>

        4. Cause number: <u>7:21-cv-10-O</u>

        5. Name of judge to whom case was assigned: <u>Reed O'Connor</u>

        6. Disposition: (Was the case dismissed, appealed, still pending?) <u>Pending</u>

        7. Approximate date of disposition: <u>N/A</u>

Rev. 05/15

B. If your answer to "A" is "yes," describe each lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, giving the same information.)

1. Approximate date of filing lawsuit: February 25, 2021

2. Parties to previous lawsuit:

   Plaintiff(s) James E. Sanders

   Defendant(s) John S. Black, Russell W. Duggins, Kyle Kluver, et al.

3. Court: (If federal, name the district; if state, name the county.) Northern District of Texas

4. Cause number: 7:21-cv-14-O

5. Name of judge to whom case was assigned: Reed O'Connor

6. Disposition: (Was the case dismissed, appealed, still pending?) Pending

7. Approximate date of disposition: N/A

Rev. 05/15

---

B. If your answer to "A" is "yes," describe each lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, giving the same information.)

1. Approximate date of filing lawsuit: June 3, 2021

2. Parties to previous lawsuit:

   Plaintiff(s) James E. Sanders

   Defendant(s) Magnus O. Uduji, Leonard S. Murray, Anthony J. Moulton, et al

3. Court: (If federal, name the district; if state, name the county.) Northern District of Texas

4. Cause number: 7:21-cv-40-O

5. Name of judge to whom case was assigned: Reed O'Connor

6. Disposition: (Was the case dismissed, appealed, still pending?) Pending

7. Approximate date of disposition: N/A

Rev. 05/15

2a

II.   PLACE OF PRESENT CONFINEMENT: James V. Allred Unit
_____ 2101 FM 369N, Iowa Park, TX 76367

III.   EXHAUSTION OF GRIEVANCE PROCEDURES:

Have you exhausted all steps of the institutional grievance procedure?      X YES   ___ NO

Attach a copy of your final step of the grievance procedure with the response supplied by the institution.

IV.   PARTIES TO THIS SUIT:

A. Name and address of plaintiff:   James E. Sanders #1579328 _____
_____ 2101 FM 369N, Iowa Park, TX 76367

_____

B. Full name of each defendant, his official position, his place of employment, and his full <u>mailing</u> address.

Defendant #1: Kristen Gibson, Vice Chairman of Classification--TDCJ
_____ PO Box 99, Huntsville, TX 77342

Briefly describe the act(s) or omission(s) of this defendant which you claimed harmed you.
Participated in & condoned RACIAL DISCRIMINATION, HELD SHAM SCC hearings to indefinite-
ly hold me in Ad-Seg in violation of the Due Process Clause, D.I. to violations.

Defendant #2: Ingrid Y. Ward, Kitchen Major, Allred Unit
_____ 2101 FM 369N, Iowa Park, TX 76367

Briefly describe the act(s) or omission(s) of this defendant which you claimed harmed you.
Actively impaired medical treatment, served inadequate portion & unsafe food, Deliberately
Indifferent (D.I.) to unsanitary food service practices & conditions in 12 bldg kitchen.

Defendant #3: Bryan D. Reitsma, Assistant Warden--Allred Ad-Seg Warden
_____ 2101 FM 369N, Iowa Park, TX 76367

Briefly describe the act(s) or omission(s) of this defendant which you claimed harmed you.
Participated in & condoned RACIAL DISCRIMINATION & sham SCC hearings, forced inmates to
live in inhumane conditions, jeopardized my safety, condoned & facilitated retaliation.

Defendant #4: Jessica Back, Program Supervisor I, Offender Grievance
_____ 1060 HWY 190E, Huntsville, TX 77340

Briefly describe the act(s) or omission(s) of this defendant which you claimed harmed you.
D.I. to unsanitary food service practices & conditions; failed to thoroughly investigate
GRVs; condoned, facilitated and covered up constitutional violations.

Defendant #5: Patrick L. O'Daniel, Chairman-Texas Board of Crim. Justice
_____ PO Box 13084, Austin, TX 78711

Briefly describe the act(s) or omission(s) of this defendant which you claimed harmed you.
D.I. to unsanitary food service practices & inhumane living conditions, condoned Eighth
Amendment and federal law violations.

Rev. 05/15

3a

II.   PLACE OF PRESENT CONFINEMENT:   James V. Allred Unit
                                     2101 FM 369N, Iowa Park, TX 76367

III.  EXHAUSTION OF GRIEVANCE PROCEDURES:
      Have you exhausted all steps of the institutional grievance procedure?        X YES ___NO
      Attach a copy of your final step of the grievance procedure with the response supplied by the institution.

IV.   PARTIES TO THIS SUIT:
      A. Name and address of plaintiff:   James E. Sanders #1579328
                                          2101 FM 369N
                                          Iowa Park, TX 76367

      B. Full name of each defendant, his official position, his place of employment, and his full mailing address.

         Defendant #6:  Oscar Mendoza, Deputy Executive Director-TDCJ
                        PO Box 99, Huntsville, TX 77342

         Briefly describe the act(s) or omission(s) of this defendant which you claimed harmed you.
      D.I. to unsanitary food service practices & inhumane living conditions, condoned Eighth
      Amendment and federal law violations.
         Defendant #7:  Bobby Lumpkin, TDCJ Director of CID
                        PO Box 99, Huntsville, TX 77342

         Briefly describe the act(s) or omission(s) of this defendant which you claimed harmed you.
      D.I. to unsanitary food service practices & inhumane conditions, condoned Eighth Amendment
      and federal even though they endangered inmates & staff.
         Defendant #8:  M. Barthela, State Classification Committee representative
      (last known)     PO Box 99, Huntsville, TX 77342  (Employment status unknown)

         Briefly describe the act(s) or omission(s) of this defendant which you claimed harmed you.
      Participated in & condoned RACIAL DISCRIMINATION & sham SCC hearings to indefinitely
      hold me in Ad-Seg in violation of the Due Process Clause.
         Defendant #9:  Angela N. Davis, Case Manager-Unit Classification, Allred
                        2101 FM 369N, Iowa Park, TX 76367

         Briefly describe the act(s) or omission(s) of this defendant which you claimed harmed you.
      Participated in & condoned RACIAL DISCRIMINATION & sham sham SCC hearings to indefinitely
      hold me in Ad-Seg in violation of the Due Process Clause, impeded ATC by withholding info.
         Defendant #10 Tina S. Vitolo, Program Supervisor III-Classification,Allred
                        2101 FM 369N, Iowa Park, TX 76367

         Briefly describe the act(s) or omission(s) of this defendant which you claimed harmed you.
      Condoned & facilitated RACIAL DISCRIMINATION & sham SCC hearings and the falsification
      of State documents via SCC documents.

                                                                              Rev. 05/15

                                          3b

II.  PLACE OF PRESENT CONFINEMENT:___James V. Allred Unit____
    2101 FM 369N, Iowa Park, TX 76367

III.  EXHAUSTION OF GRIEVANCE PROCEDURES:

Have you exhausted all steps of the institutional grievance procedure?     X YES ___NO

Attach a copy of your final step of the grievance procedure with the response supplied by the institution.

IV.  PARTIES TO THIS SUIT:

A.  Name and address of plaintiff:___James E. Sanders #1579328_____

    2101 FM 369N

    Iowa Park, TX 76367

B.  Full name of each defendant, his official position, his place of employment, and his full mailing address.

Defendant #1:  David L. Ivey, Unit Grievance Investigator II-Allred
    2101 FM 369N, Iowa Park, TX 76367

Briefly describe the act(s) or omission(s) of this defendant which you claimed harmed you.
Failed to thoroughly investigate GRVs, condoned & covered up misconduct, Manipulated the
GRV process to deny 1st Amend. rights, D.I. to unsanitary & inhumane living conditions.

Defendant #2:  Ruth E. Schroyer, Unit Grievance Investigator-II, Allred
    2101 FM 369N, Iowa Park, TX 76367

Briefly describe the act(s) or omission(s) of this defendant which you claimed harmed you.
Failed to properly investigate GRVs, condoned & covered up misconduct, manipulated the
GRV process to deny 1st Amend. rights, D.I. to unsanitary & inhumane living conditions.

Defendant #3:  Cody A. Wolfrum (previous Ad-Seg Warden)
No longer on Allred or employed by TDCJ after slapping an inmate.

Briefly describe the act(s) or omission(s) of this defendant which you claimed harmed you.
D.I. to unsanitary food practices & inhumane living conditions; placed inmate & staff
safety at risk in violation of the Eighth Amendment.

Defendant #4:  Jimmy S. Smith, Senior Warden, Allred
    2101 FM 369N, Iowa Park, TX 76367

Briefly describe the act(s) or omission(s) of this defendant which you claimed harmed you.
D.I. to unsanitary food practices & inhumane living conditions; placed
inmate & staff safety at risk in violation of the Eighth Amendment.

Defendant #5:  David Blackwell, TDCJ Director-Region IV (recently left
Region V)     965 Ofstie St., Beeville, TX 78102

Briefly describe the act(s) or omission(s) of this defendant which you claimed harmed you.
D.I. to unsanitary food practices & inhumane living conditions: placed
inmate & staff safety at risk in violation of the Eighth Amendment.

Rev. 05/15

3c

II.   PLACE OF PRESENT CONFINEMENT: James V. Allred Unit
2101 FM 369N, Iowa Park, TX 76367

III.   EXHAUSTION OF GRIEVANCE PROCEDURES:

Have you exhausted all steps of the institutional grievance procedure?      X  YES  ___NO

Attach a copy of your final step of the grievance procedure with the response supplied by the institution.

IV.   PARTIES TO THIS SUIT:

A. Name and address of plaintiff:  James E. Sanders #1579328
2101 FM 369N, Iowa Park, TX 76367

B. Full name of each defendant, his official position, his place of employment, and his full mailing address.

Defendant #16: Stephen Bryant, TDCJ Director-Region V
304 W. 6th St., Plainview, TX 79072

Briefly describe the act(s) or omission(s) of this defendant which you claimed harmed you.
D.I. to unsanitary food practices & inhumane conditions; placed inmate &
staff safety, physical, mental & emotional health at risk via inaction.

Defendant #17: Brandon D. Dishman, Ad-Seg Major, Allred
2101 FM 369N, Iowa Park, TX 76367

Briefly describe the acts(s) or omission(s) of this defendant which you claimed harmed you.
Participated in & condoned RACIAL DISCRIMINATION & sham hearings & PREA violations; D.I.
to unsanitary food service practices & inhumane living conditions & risks to safety.

Defendant #18: Timothy S. Hooper, Assistant Warden, Allred
2101 FM 369N, Iowa Park, TX 76367

Briefly describe the act(s) or omission(s) of this defendant which you claimed harmed you.
D.I. to unsanitary food practices & inhumane living conditions; placed inmate & staff
safety, mental, physical & emotional health at risk in violation of the 8th Amendment.

Defendant #19: Kristen L. Rasmussen, Corrections Officer, Allred
2101 FM 369N, Iowa Park, TX 76367

Briefly describe the act(s) or omission(s) of this defendant which you claimed harmed you.
Ignored medical heat restrictions, precautions & training, placed Plaintiff's health at
risk, D.I. to my heat stress & risk imposed on health, refused to allow Plaintiff's entry.

Defendant #20: Aaron Newell, Corrections Officer, Allred
2101 FM 369N, Iowa Park, TX 76367

Briefly describe the act(s) or omission(s) of this defendant which you claimed harmed you.
Violated PREA w/ sexually harassing comments, retaliated when asked to cease said com-
ments, and continued harassment via denials of my rec & showers several times.

Rev. 05/15

II.    PLACE OF PRESENT CONFINEMENT: James V. Allred Unit
       2101 FM 369N, Iowa Park, TX 76367

III.   EXHAUSTION OF GRIEVANCE PROCEDURES:

Have you exhausted all steps of the institutional grievance procedure?          X  YES ____NO

Attach a copy of your final step of the grievance procedure with the response supplied by the institution.

IV.    PARTIES TO THIS SUIT:

A. Name and address of plaintiff: James E. Sanders #1579328
                                  2101 FM 369N
                                  Iowa Park, TX 76367

B. Full name of each defendant, his official position, his place of employment, and his full <u>mailing</u> address.

Defendant #1:  Jessica Riley,
               1060 HWY 190E, Huntsville, TX 77340

Briefly describe the act(s) or omission(s) of this defendant which you claimed harmed you.
D.I. to unsanitary food service practices & conditions; failed to thoroughly investigate
GRVs; condoned, facilitated & covered up constitutional violations.
Defendant #2:  Marla Norsworthy, Program Specialist I, PREA Ombudsman
Office,         PO Box 99, Huntsville, TX 77342

Briefly describe the acts(s) or omission(s) of this defendant which you claimed harmed you.
D.I. to sexual harassment & retaliation; condoned & facilitated the retaliation though
aware PREA policy & protocols had been violated, covered up official misconduct.
Defendant #3:  Traci R. Cooke, Grievance Supervisor--Allred
               2101 FM 369N, Iowa Park, TX 76367

Briefly describe the act(s) or omission(s) of this defendant which you claimed harmed you.
D.I. to unsanitary food service conditions; condoned & facilitated the destruction of
state documents & manipulation of the GRV process to cover up misconduct & deprive me of
~~#3 Defendant #4~~      my First Amendment rights.

Briefly describe the act(s) or omission(s) of this defendant which you claimed harmed you.

Defendant #4:  Gregory S. Hicks, Law Librarian III (was UGI-2) Allred
               2101 FM 369N, Iowa Park, TX 76367

Briefly describe the act(s) or omission(s) of this defendant which you claimed harmed you.
D.I. to unsanitary food service practices; condoned, facilitated & covered up unsanitary
practices by falsifying state documents, D.I. to the health risks posed.

Rev. 05/15

3 e

V.   STATEMENT OF CLAIM:

State here in a short and plain statement the facts of your case, that is, what happened, where did it happen, when did it happen, and who was involved. Describe how each defendant is involved. You need not give any legal arguments or cite any cases or statutes. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. Attach extra pages if necessary, but remember the complaint must be stated briefly and concisely. IF YOU VIOLATE THIS RULE, THE COURT MAY STRIKE YOUR COMPLAINT.

The FACTS herein, although numerous, establish countless ONGOING civil rights violations and the deliberate indifference (D.I.) of ALL TWENTY-FOUR (24) defendants, which occurred while each defendant acted under the color of state law. RACIAL DISCRIMINATION & DISPARITY and sham SCC/RHC hearings in violation of the 14th Amendment are holding Plaintiff in Ad-Seg indefinitely; thus subjecting him to cruel & unusual punishment and inhumane living conditions in violation of the 8th Amendment. Staffing shortages, which violate federal law and jeopardize the safety & security of inmates & staff, occur DAILY while Allred & TDCJ administrators ignore the risks & the deprivation of rec & showers to punish/retaliate against inmate complaints: they condone & facilitate PREA violations & retaliation in violation of the 1st Amendment.

VI.   RELIEF:                                              (FACTS cont. on p. 1 FACTS.)

State briefly exactly what you want the court to do for you. Make no legal arguments. Cite no cases or statutes.

Grant a declaration that the acts and omissions described herein violated his rights under the Constitution and laws of the United States, and
(Cont. on p. 4a)

VII.   GENERAL BACKGROUND INFORMATION:

A. State, in complete form, all names you have ever used or been known by including any and all aliases.
James Earvin Sanders, James Ervin Sanders, James Sanders, and Sandman

B. List all TDCJ-CID identification numbers you have ever been assigned and all other state or federal prison or FBI numbers ever assigned to you.

TDCJ# 680996 and # 1579328

VIII.   SANCTIONS:

A. Have you been sanctioned by any court as a result of any lawsuit you have filed?   ____YES  X  NO

B. If your answer is "yes," give the following information for every lawsuit in which sanctions were imposed. (If more than one, use another piece of paper and answer the same questions.)

1. Court that imposed sanctions (if federal, give the district and division):_____

2. Case number:_____

3. Approximate date sanctions were imposed:_____

4. Have the sanctions been lifted or otherwise satisfied?              ____YES ____NO

Rev. 05/15

(cont. from p. 4, VI. RELIEF.)

Grant Plaintiff's Motion for A Preliminary Injunction in full;

Grant compensatory damages in the amount of $100,000 against Defendants Gibson, Reitsma, Barthela, Davis, Vitolo, Ivey, Schroyer, Dishman, Hooper and Cooke each jointly and severally for participating in, condoning, facilitating and covering up RACIAL DISCRIMINATION, sham SCC/RHC hearings, and violations of Plaintiff's due process rights.

Grant compensatory damages in the amount of $100,000 against Defendants Ward, Reitsma, Back, Ivey, Schroyer, Wolfrum, Smith, Bryant, Hooper, Riley and Hicks each jointly and severally for covering up, condoning and facilitating unsanitary food service practices, which posed serious health risks.

Grant compensatory damages in the amount of $50,000 against Defendants Reitsma, Hooper, Smith, Wolfrum, O'Daniel, Mendoza, Lumpkin, Schroyer, Blackwell, Bryant, Dishman and Riley for placing Plaintiff at risk and depriving him of rec, showers and safety by failing to properly staff Allred Ad-Seg and/or ignoring said violations.

Grant compensatory damages in the amount of $50,000 against Defendant Rasmussen for placing Plaintiff's health and safety at risk by disregarding Heat Safety protocols and being deliberately indifferent to his heat stress; and $30,000 against Defendants Schroyer, Hooper and Back each jointly and severally for their deliberate indifference to and attempt to cover up Rasmussen's misconduct.

Grant compensatory damages in the amount of $25,000 against Defendants Newell, Dishman and Norsworthy for making, condoning and facilitating sexually harassing comments, retaliation and harassment in violation of PREA policy and protocols.

Grant punitive damages in the amount of $100,000 against each defendant.

Grant $50,000 award pain & suffering and $50,000 for mental and

4a

emotional anguish from nausea, stomach cramps and diarrhea suffered regularly and the FEAR of eating said food, respectively.

Grant a jury trial on all issues triable by jury;

Plaintiff's costs in this suit, and

Any additional relief the Court deems just, proper, and equitable.

C. Has any court ever warned or notified you that sanctions could be imposed? _____ YES _x_ NO

D. If your answer is "yes," give the following information for every lawsuit in which a warning was issued. (If more than one, use another piece of paper and answer the same questions.)

   1. Court that issued warning (if federal, give the district and division): _____

   2. Case number: _____

   3. Approximate date warning was issued: _____

Executed on: __1/24/23__          James E. Sanders _____
              DATE

                                  _James E. Sanders_____
                                  (Signature of Plaintiff)

**PLAINTIFF'S DECLARATIONS**

   1. I declare under penalty of perjury all facts presented in this complaint and attachments thereto are true and correct.
   2. I understand, if I am released or transferred, it is my responsibility to keep the court informed of my current mailing address and failure to do so may result in the dismissal of this lawsuit.
   3. I understand I must exhaust all available administrative remedies prior to filing this lawsuit.
   4. I understand I am prohibited from brining an *in forma pauperis* lawsuit if I have brought three or more civil actions or appeals (from a judgment in a civil action) in a court of the United States while incarcerated or detained in any facility, which lawsuits were dismissed on the ground they were frivolous, malicious, or failed to state a claim upon which relief may be granted, unless I am under imminent danger of serious physical injury.
   5. I understand even if I am allowed to proceed without prepayment of costs, I am responsible for the entire filing fee and costs assessed by the court, which shall be deducted in accordance with the law from my inmate trust account by my custodian until the filing fee is paid.

Signed this __twenty-fourth__ day of __January_____, 20 _23____.
               (Day)                    (month)              (year)

                                  James E. Sanders #1579328

                                  _James E. Sanders_____
                                  (Signature of Plaintiff)

This complaint will be placed in the
unit mailing system on 1/24/23.

**WARNING: Plaintiff is advised any false or deliberately misleading information provided in response to the above questions may result in the imposition of sanctions. The sanctions the court may impose include, but are not limited to, monetary sanctions and the dismissal of this action with prejudice.**

Rev. 05/15

RACIAL DISCRIMINATION & DUE PROCESS VIOLATION

FACTS

At all times listed herein Plaintiff is in Allred 12 bldg Ad-Seg.

1. In or around February or March of 2021, Plaintiff was informed by a mutual acquaintance that his former cellmate, Keith Cook, was in GP (General Population) on Allred. As they were segged for the same incident, Plaintiff became hopeful for his release in April.

2. April 27, 2021: Plaintiff's SCC hearing was held in absentia by Roshanda Ferguson (SCC), Angela N. Davis (UCC), and a third party. Ms. Ferguson opted to take Plaintiff's file back to Huntsville. (See Exhibit A.)

3. June 2, 2021: Plaintiff wrote Defendant Tina Vitolo (UCC) to ascertain why he was placed back on the 30-Day Move List after being off for TWO years. (See Exhibit B.) She did NOT reply.

4. July 21, 2021: Plaintiff wrote a follow-up letter to which Defendant Vitolo LIED, claiming he was "never taken off the (30-Day Move) list, citing COVID. (See Exhibit C, bottom.) The dates listed in Exhibit B, which is referenced, clearly predate COVID.

5. July 27, 2021: Plaintiff again wrote Defendant Vitolo, who now admits Plaintiff was removed from the list, then put back on, but her dates and facts are INCORRECT and UNTRUE. (See Exhibits D & V.)

6. September 8, 2021: Plaintiff received the SCC paperwork and decision 4½ months AFTER the April 2021 hearing. He was REMAINED in Ad-Seg until 10/2021. (See Exhibit A at 2, bottom.)

7. October 26, 2021: With 7½ years in Ad-Seg & an S4 status (see Exhibit N), Plaintiff presented a written statement in favor of his release from Ad-Seg (Exhibit E), which Defendant Davis skimmed and Defendant M. Barthela asked him to summarize.

   a) Defendant Barthela told Plaintiff outright, "I can't release

you from Ad-Seg. I can take your statement back to my supervisors, but I can't release you." Yet she closed the case, REMAINING Plaintiff till April 2022 rather than leaving it open for supervisory review, indicating a sham review.

    b) Neither Defendant Davis nor Major Todd Murdock (the 3rd memner) issued any type of recommendation, essentially acquiescing Barthela's decision and condoning RACIAL DISCRIMINATION and unjust continued segregation.

    c) No one from SCC ever responded to the statement (Exhibit E) or attempted to explain the DISPARITY in the handling of Plaintiff and Cook's situations.

8. Monday, January 3, 2022: Plaintiff received a visit from his sister, Phyllis Powell, who inquired into his release from Ad-Seg. Once she found out Keith Cook had been released, she immediately suspected RACIAL DISCRIMINATION. (See Exhibits G at 1, paragraph 3; and T at 1, paragraph 5.)

9. January 11, 2021: Plaintiff sent copies of a follow-up letter to Kim Massey (ex-Head of SCC) and Defendant Vitolo seeking an explanation for his continued segregation that appeared to be against TDCJ policy and RACIALLY MOTIVATED. (See Exhibit G.) Neither party replied.

10. February 28, 2022: Plaintiff sent copies of a 3rd letter to Massey and Vitolo, citing a prima facie case of RACIAL DISCRIMINATION and threatening a lawsuit. (See Exhibit H.)

11. March 4, 2022: Defendant Vitolo replied, claiming RACE was NOT a factor yet providing NO plausible explanation for the DISPARITY. (See Exhibit H at 3.)

12. March 2, 2022: Plaintiff wrote Defendant Davis seeking the correct spelling of Defendant Barthela's name. (See Exhibit I.) She did NOT

reply.

13. March 7, 2022: Plaintiff again wrote Defendant Davis seeking Barthela's FULL name, yet she simply circled the correct spelling of the last name. (See Exhibit J.)

14. Same day, Plaintiff also sent a request for Barthela's FULL name to Defendant Vitolo. (See Exhibit K.) She did NOT reply.

15. March 10, 2022: Plaintiff wrote Defendant Davis for the FULL names of both R. Ferguson and M. Barthela from SCC. Davis directed Plaintiff to the law library after initially preparing to lie, writing "Neither" before marking it out. (See Exhibit L.)

16. March 14, 2022, at Allred GRV dept: Defendant David Ivey rejects Plaintiff's RACIAL DISCRIMINATION GRV (Exhibit M-1) as untimely (Exhibit M-2) despite it being within 15 days of Vitolo's response on 3-4-22. (See Exhibit H-3.)

17. March 15, 2022, at Allred GRV dept: Defendant Ivey again rejects Plaintiff's GRV as untimely (see Exhibit M-2), despite Plaintiff's letter to the contrary. (See Exhibit M-3.)

    a) Ivey makes the incident date the 10-26-21 SCC date (FACT 7) even though NOTHING indicating RACIAL DISCRIMINATION occurred there. (See M-4.)

    b) Ivey ignores the THREE letters sent to UCC and SCC even though they were on file, available and referenced in the GRV.

    c) Ivey manipulated the GRV process to prevent Plaintiff from filing said GRV, indicating only one part of the GRV policy. (See M-5, underlined; see also Appendix 2, AD-3.82, p.6, 3a & b.)

18. March 16, 2022, Allred GRV dept: Defendant Ivey rejects Plaintiff's RACIAL DISCRIMINATION GRV, unjustly, for the 3rd time (see M-2), despite an I-60 explaining it's timeliness. (See Exhibit M-6.)

19. Same day, Plaintiff wrote Defendant Davis after I-60 response indicated M. Barthela was not listed as a TDCJ employee. (See Exhibit O.) Davis refused to consult Plaintiff's file for M. Barthela's full name. (See Exhibit P.) She did NOT reply.

20. March 17, 2022: Plaintiff experienced a retaliatory move from 12-A-26 to 12-A-40, which had NO table, even though per policy all Restrictive Housing (RH) cells should. (See Restrictive Housing Plan p. 17, D at Appendix 3--excerpts from RH Plan.)

   a) Sgt. Barbara Bates lied about moving Plaintiff the next day. (See Exhibit Q.)

   b) Several other cells were open and available on-pod. (See Ex. Q)

21. March 22, 2022, at 12:11pm at 12-A-40, Plaintiff spoke to Cpt. Brandon Dishman about the cell's lack of a table, yet he refused to move me, claiming nothing was wrong with the cell. (See Ex. Q-2, paragraphs 7-8.)

22. March 24, 2022, at Allred GRV dept: Defendants Ivey & Hooper denied any wrongdoing occurred despite policy stating otherwise. (See Appendix 3, RH Plan p. 17, D.) PLEASE NOTE: Ivey investigated a GRV that was connected to his own misconduct. (See Exhibit Q 1-2.)

23. April 26, 2022: At Plaintiff's SCC hearing, Defendant Kristen Gibson, Vice Chairman of SCC, could not provide a plausible explanation for Plaintiff's continued segregation after 8 years, nearly 3 w/out a major case, and an S4 status, while Keith Cook had been released on the same infraction. (See Exhibits T at 2, para. 6 and at 3 para. 1; see also Exhibit Z at 1, 2nd to last paragraph.) Gibson opted to take the file back to Huntsville for a closer look.

24. April 27, 2022: Plaintiff wrote two I-60s to acquire Defendant Gibson's full name and title as it was not provided at the hearing. (See Exhibits R & S.)

4

25. April 28, 2022, at 12 bldg, A-pod rec yard: Plaintiff spoke to Defendant Ivey and was told to wait until his SCC papers were returned to file his appeal. (See Exhibit bB-1, paragraph 1; see also bB-5, paragraph 2.)

26. April 29, 2022: Plaintiff sent a 4-page letter to Defendant Gibson via certified mail (#7020 0640 0001 7275 4119) about the RACIAL DISCRIMINATION and continued segregation in order to point various inconsistencies prior to her SCC decision. (See Exhibit T.) She did NOT reply. A copy was also sent to Defendant Vitolo. (See Ex. U.)

27. June 11, 2022: 1½ months after his April SCC hearing, Plaintiff wrote Vitolo about the results thereof. Vitolo responded, telling him SCC remained him but providing no reason. (See Exhibit W.)

28. June 26, 2022: Plaintiff wrote then-Major Timothy Washington about his continued placement on the 30-Day Move List. (See Exhibit cC.) He did NOT reply.

29. June 30, 2022: Plaintiff inquired about the "actual SCC paperwork" so he could see why he was REMAINED and appeal the decision. (See Exhibit X.)

30. July 5, 2022: Plaintiff wrote Vitolo about reviewing his classification file because he believed he was NOT being told the true reasons behind his detainment in Ad-Seg. (See Exhibit Y.)

31. On August 2, 2022, Plaintiff received Vitolo's response (to FACT 29), blaming SCC, not UCC, for remaining him and directing Plaintiff to ask SCC at his next review. (See Exhibit Y.)

32. On August 3, 2022, Vitolo responded to FACT 27, over a month later, claiming SCC had the paperwork. (See Exhibit X.)

33. Same day, Plaintiff wrote a letter to Defendants Vitolo and Gibson requesting his SCC paperwork and to review his classification file.

(See Exhibit Z.) Neither replied nor was he permitted to review his classification file.

34. August 23, 2022, at Step 2: Defendant Jessica Back disregards Plaintiff's complaint about harassment & retaliation due to RACIAL DISCRIMINATION complaint, claiming he was moved to a new cell and had always been appropriately housed. (See Exhibit Q-4.)

35. August 27, 2022, Plaintiff wrote a complaint letter to Marvin Dunbar, Director of the ARRM Division of TDCJ, pertaining to Defendant Ivey's manipulation of the GRV process in Exhibit Q (FACTS 16, 17 & 18) and the denial of Plaintiff's First Amendment right to seek redress. (See Exhibit aA.) He did NOT reply.

36. August 29, 2022, Allred GRV dept: Defendant Ruth Schroyer rejects Plaintiff's SCC Appeal/RACIAL DISCRIMINATION GRV as untimely. (See Exhibit bB-2.)

37. August 29, 2022, Plaintiff wrote a letter to Defendant Schroyer & her supervisor, Traci Cooke, about the rejection of GRV# 2022143549 (Exhibit bB) being unjust and contradictory to Ivey's instructions (see FACT 25). (See Exhibit bB-5.)

38. August 31, 2022, Allred GRV dept: Suddenly the GRV is no longer untimely and is filed. (See Exhibit bB-1, top.) Proving the initial denial was an unjust attempt to manipulate the GRV process to deny exhaustion of remedies.

39. September 7, 2022, Plaintiff wrote Defendant Dishman about his continued placement on the 30-Day Move List, requesting removal from the list or an explanation to the contrary. (See Exhibits dD & eE.)

40. September 7, 2022: Plaintiff wrote Defendants Bryan Reitsma and Dishman, along with Cpt. Jacob Jones about the non-existence of

RHC recommendations despite Plaintiff having nearly 8½ years in Ad-Seg and being major case-free for over 3 years. (See Exhibit eE.)

41. September 8, 2022: Plaintiff filed a GRV/Appeal to his 8-29-22 RHC hearing due to NEVER receiving a recommendation for release from Ad-Seg or the 30-Day Move List. (See Exhibit fF-1.)

42. September 12, 2022, Allred GRV dept: Defendants Schroyer & Hooper close GRV# 2022144588 (Ex. bB), regurgitating what Plaintiff had already told them and instructing him to direct all SCC questions to SCC yet providing no explanation for the RACIAL DISPARITY or Plaintiff's continued segregation. (See Exhibit bB-2.)

43. September 14, 2022, at 12-E-83 at 9:30am: Plaintiff spoke to Defendant Bryan Reitsma about the missing SCC paperwork, lack of RHC recommendations, his letter about it (FACT 40), and ROACHES in the hot boxes.

   a) Reitsma advised Plaintiff to direct his SCC questions to the SCC on 9-15-22.

   b) Claimed he did NOT receive any letters about RHC hearings.

   c) Once Plaintiff produced a copy of the letter, Reitsma claimed his secretary would re-route letter with multiple addresses to his subordinates. (See Exhibit eE.)

44. September 15, 2022: Plaintiff's SCC hearing was moved up by approx. 40 days, with R. Yasko (SCC), Jessica Smith-Grantom (UCC), and Defendant Reitsma on the committee.

   a) Contrary to Reitsma's assertion (FACT 43a) the SCC provided NO explanation for the RACIAL DISPARITY or continued segregation.

   b) R. Yasko stated Plaintiff WAS doing everything he should be doing for release.

   c) Although the SCC had Plaintiff's file, Smith-Grantom said she

did NOT know why he had NOT rec'd the April 2022 SCC paperwork but would look into it.

d) R. Yasko chose to take the file back to Huntsville yet Smith-Grantom and Defendant Reitsma made no recommendations whatsoever.

45. September 21, 2022 at 12-E-51 at 10:10am: Plaintiff spoke to Mjr. Dishman about the letter about removal from the 30-Day Move List. (See FACT 39.) Dishman confirmed receipt, said he looked into it and had his secretary looking into it further. (See Exhibit 1L.)

46. September 26, 2022: At 7pm mail call, Officer Jacob Swank handed Plaintiff a double-sided copy of the April SCC paperwork. This document was signed and dated "4/26/22" as the date Plaintiff was notified of the SCC's decision. (See Exhibit jJ at 2, bottom.)

a) This document was NOT stamped with the date it was returned to Plaintiff. (Compare to Exhibit A at 2.)

b) Documentary PROOF exists that the SCC paperwork was NOT returned to Plaintiff on 4-26-22. (See FACTS 27, 29, 31, 32 & 33; see also Exhibits W, X, Y & Z at 2, top.)

c) SCC document provides the same rote reasons initially used to segregate Plaintiff in 2014 yet NO EXPLANATION for the RACIAL DISPARITY or Plaintiff's continued segregation. (See Exhibit jJ.)

47. September 27, 2022: Plaintiff wrote I-60 to Defendant Vitolo pertaining to the falsified SCC papers and the identity of the signatory. (See Exhibit gG.) She did NOT reply.

48. October 3, 2022: Plaintiff again wrote Defendant Vitolo about the identity of the person who falsified the SCC document. (See Exhibit hH.) She did NOT reply.

49. October 8, 2022: Plaintiff wrote Step 1 on the Falsification of Records pertaining to the SCC documents. (See Exhibit iI.)

50. October 10, 2022: Plaintiff sent follow-up letter to Major Dishman on 30-Day Move List removal. (See Exhibit kK.) Dishman did NOT reply.

51. October 19, 2022: Plaintiff filed RACIAL DISCRIMINATION GRV on Major Dishman after being moved from 12-E-51 to 12-C-10 on 10/17/22, which confirmed he was still on Move List. (See Exhibit lL.)

52. Same day: October 19, 2022, at 12-C-10, at 9:20am: Plaintiff spoke to Reitsma about his lack of a recommendation at the 9/15/22 SCC hearing. Reitsma stated, "We only give recommendations it they [SCC] ask for them."

53. November 4, 2022: Plaintiff received a response from Vitolo notifying him that SCC had NOT made a decision. (See Exhibit mM.)

54. November 15, 2022: Plaintiff received another response from Vitolo: "still waiting on a response from SCC." (See Exhibit nN.)

55. January 9, 2023: Plaintiff submitted a GRV pertaining to his GRVs on sham RHC hearings (Exhibit fF) and falsified SCC documents (Exhibit iI) having vanished after submission. (See Exhibits pP 1-4, oO-1, oO-2 & oO-3; see also FS FACT2.)

56. Same day, Plaintiff submitted an I-60 to Defendant Vitolo about the decision from his 9/15/22 SCC hearing. (See Exhibit qQ.) She did NOT reply.

57. January 20, 2023: Plaintiff sent a FOURTH I-60 to Vitolo about the 9/15/22 SCC decision, yet FOUR MONTHS after the hearing, still NO decision. (See Exhibit rR; see also mM & nN.)



## FOOD SERVICE (FS)

### FACTS

1. January 25, 2021: Plaintiff had a LIVE ROACH on his dinner tray and filed a GRV about the ROACH INFESTATION in the hot boxes. (See FS-1A.)

2. 1/26/21: Plaintiff submitted an I-60 for the GRV# to FS-1 because GRVs about serious violations ten to disappear. (See FS1-E.)

3. February 26, 2021, at Allred GRV dept: GRV# 2021063387 was answered by Defendant Gregory Hicks and Asst. Warden M. Feazell, who made no attempt to verify or eradicate the ROACH INFESTATION. (See FS1-B.)

4. March 3, 2021: Plaintiff wrote I-60 to Defendant Ingrid Ward after DFH (Diet For Health) trays were served pancakes for 10-out-of-13 days. (See FS-2.)

    a) DFH trays have a menu that is calibrated by a dietitian and prescribed by a doctor to treat serious medical needs. (See FS-27.)

    b) Plaintiff was placed on DFH to treat his high blood pressure and high cholestrol.

    c) Plaintiff takes (3) blood pressure medications (AMLODIPINE 10MG, LISINOPRIL 40MG, HydroCHLOROthiazide 25MG.).

5. May 27, 2021: 12 bldg kitchen was shutdown AFTER lunch to be sprayed & fumigated after ROACHES and DEAD MICE were found in some hot boxes (OVER FOUR MONTHS after FS1 was filed).

    a) This information came from Officer Zachary T. White as he passed out johnnies (sack lunches) at dinner on A-pod.

    b) This is PROOF of deliberate indifference (D.I.) to the ROACH INFESTATION presented in FS1.

    c) Meal trays did NOT resume until lunch on Monday, May 31, 2021.

*** PLEASE NOTE: This information is recorded in Plaintiff's log. ***

6. July 1, 2021, at A-pod: DFH breakfast trays served w/out breakfast

10

sausage or a protein substitute. (See FS3-A.) Later, the kitchen
sent BOILED hamburger patties.

7. Same day, at A-pod, B-section dayroom: Plaintiff spoke to Defend-
ant Ward, who said food service was NOT substituting anything for
the breakfast sausage and DFH trays should have had them at breakfast.

8. 7/22/21, at Step 2: Defendant Jessica Back ignores the ROACH INFES-
TATION and the fact that trays are being contaminated while inside
the hot boxes. (See FS1-D.)

   a) Back was oblivious to the fact that ROACHES & DEAD HIVE had
   been found in the hot boxes, confirming the INFESTATION. (See
   FS FACT 5.)

   b) This shows a lack of any type of investigation as her reply
   came nearly TWO MONTHS later.

   c) NOTE: This Step 2 was answered 6 FULL MONTHS after the incident.

9. August 9, 2021: Plaintiff filed a GRV about the DFH trays NOT being
right: incorrect items, missing items, and 13-straight days of pan-
cakes, contrary to doctor's orders. (See FS3-A.)

10. 8/10/21, at Allred GRV dept: Defendants Hicks & Wolfrum issue fic-
titious GRV response, claiming a pork shortage, contrary to Ward's
in-person response. (SEE FS FACT 7.). (See FS3-B.) This response
issued in ONE DAY.

11. 8/22/21: Plaintiff finds TWO other white scrub-brush bristles in
his ground pork at dinner after having one lodged in his throat.
Plaintiff wrote an I-60 to Defendant Ward about it. (See FS4-A.)

   a) Defendant Ward did NOT reply to the I-60.

   b) Nor did Ward or any FSMs (Food Service Managers) come to
   verify the TWO bristles.

   c) The TWO actual bristles are Exhibit FS4-B.

12. September 3, 2022, at Allred GRV dept: Despite the seriousness of

11.

the violation & PROOF (the actual bristles--FS4-B), Hicks rejected
the GRV even though it clearly stated Plaintiff attempted an inform-
al resolution. (See FS5-A at top; see also FS5-B at bottom.

    a) Attempted to manipulate the GRV process & prevent the filing
    of a legitimate GRV.

13. September 7, 2021, at Allred GRV dept: Hicks filed GRV3 2022002534
    (FS5) after Plaintiff resubmitted it with a copy of the I-60 to De-
    fendant Ward (FS4-A), along with handwritten additions.

14. 9/14/21, at Allred GRV dept: Defendants Hicks & Wolfrum denied the
    GRV in one week due to a typographical error in which Plaintiff put
    8/23 rather than 8/22/21 as the incident date (see FS5-B) and failed
    to thoroughly investigate.

    a) The attached I-60 (FS4-A) was clearly dated 8-22-21.
    b) Hicks made no attempt to clarify the discrepancy, though he
    came to the pod M-F.
    c) Nor did he verify the existence of the bristles.(FS4-B).

15. October 8, 2021, at 12-A-74: Plaintiff stopped Defendant Ivey
    during GRV pickup and showed him an undercooked/raw pancake from
    that morning's breakfast. (See FS7-A, second paragraph.) Ivey said
    he would call Defendant Ward.

16. 10/18/21: Plaintiff wrote Defendant Ward about continued problems
    with the DFH trays: raw/undercooked food being served; NO FRUIT at
    breakfast or dinner w/ NO substitute; and NO white bread. (See FS-6.)

17. November 15, 2021, at 12-A-17: Plaintiff presented ANOTHER under-
    cooked pancake, from that morning's breakfast, to Hicks. (See FS8-A
    at pp 1.) He told Plaintiff to GRV it & he'd process it.

18. 11/16/21, at Allred GRV dept: Despite having personally seen an
    undercooked pancake the previous day, Hicks, along with Defendant
    Wolfrum deny food is being undercooked & LIE, claiming it is IMPOS-

SIBLE to "determine the actual condition of your trays after they have been served..." (See FS7-B.) PLEASE NOTE:

    a) No mention of Ivey's confirmation or denial of the pancake's condition. (See FS FACT 15.)

    b) No one attempted to visit 12 bldg kitchen on a hamburger, pork or fish patty day to confirm undercooked/raw patties are being served.

    c) No investigator attempted to come on-pod to witness a feeding.

19. November 30, 2021, at Allred GRV dept: Defendants Hicks & Hooper claim Plaintiff's complaints "could not be verified by physical evidence." See FS8-B.) They also claim the Food Service Dept is "meeting standards regarding the monitoring of Restrictive Housing food preparation..." PLEASE NOTE:

    a) Physical evidence, which was presented to Hicks, was ignored, establishing a deliberate falsification of records in violation of PD-22 Code 10. (See Appendix 6: PD-22 Code excerpts.)

    b) Hicks & Hooper acknowledge a fruit shortage yet make no mention of a substitute being provided. (See FS8-B.)

20. December 4, 2021: Officer Cribbs assigned to 12 bldg kitchen AND swapping out A & B pod rec/showers. (See FS8-C.)

21. 12/6/21, at Step 2: Defendant Back responds to GRV# 2022002534, acknowledging Plaintiff's "concern may have merit" yet essentially disregarding the incident without having anyone verify the bristles. (FS4-B) existed. (See FS5-D.)

    PLEASE NOTE: Plaintiff followed Defendant Back's instructions in showing the items to staff for verification in FS1, FS7 and FS8, and the GRV administrators still denied the violations at Step 1/2.

22. (One week later) 12/13/21, and some 55 days after Plaintiff's 10-18-21 I-60, Defendant Ward replied. (See FS FACT 16 & FS-6 at bottom.)

13

a) Defendant Ward ADMITTED she had NOT been providing FRUIT.

b) She ADMITTED she had NOT provided a substitute either.

23. February 7, 2022: Plaintiff sent copies of a letter to Douglas Sparkman (in Huntsville) and Defendants Ward & Wolfrum about the deplorable condition of the DFH trays. (SEE FS-9.)

24. February 22, 2022: After receiving no reply (to FS-9) and seeing no improvement in the DFH trays, Plaintiff filed a GRV on the unsanitary conditions and inadequate portions. (See FS10-A.)

25. 2/26/22, at 12-A-26: Defendant Ward came to Plaintiff's cell w/ Sgt Coward and acknowledged she had witnessed MANY things that were being done WRONG in 12 bldg kitchen. (See FS-11 at pp 1.) NOTE:

   a) Ward started having covered trays sent to Plaintiff at lunch & dinner, thus proving the DFH trays were NOT right. (See FS-11.)

   b) These covered trays (CTs) had proper portions and FRUIT, proving FRUIT was available yet withheld from DFH dinner trays.

   c) Ward rejected the suggestion of using steam tables to reheat food. (See FS-26 at 2, paragraph or pp 1-4.)

26. March 1, 2022; at 12-A-26: Plaintiff served dirty tray loaded w/ beef 'n rice to conceal the dirty main slot. (See FS-11 at 1, pp 2-3.)

27. 3/2/22, at Step 2: Defendant Back denied Plaintiff's complaint even though he presented an undercooked pancake to Ivey, citing, "proper cooking times and temperatures are being followed." (See FS7-D; FS FACTS 15-18.)

28. 3/3/22, at Allred GRV dept: Hicks & Hooper admitted that efforts were being made to improve and address food service issues in (RH) Restrictive Housing. (See FS10-B.)

29. One day later, 3/4/22, at Step 2: j. Back insists every aspect of 12 bldg food service is in compliance and meeting policy standards, claiming, "There is no evidence to prove food is undercooked, cold,

or trays are dirty." (See FS8-D.)

    a) This contradicts the need for improvement and appropriate administrative action in FS10-B.

    b) This also shows a complete lack of investigation, by Back, into what was ACTUALLY going on.

30. 3/8/22: Plaintiff wrote a letter to Defendant Ward about issues pertaining to the covered DFH trays. (See FS-11.)

    a) Food was STILL being served on dirty CTs. (See FS-11 at pp2-3.)

    b) Trays were NOT made correctly, resulting in Soggy, inedible bread. (See FS-11 at 1, last paragraph.)

    c) Food was still NOT kept & served at temps high enough to prevent bacterial growth. (See FS-11 at 2.)

    d) Plaintiff quoted excerpts from a USA TODAY article (FS-12) and directed Defendant Ward to said article. (See FS-11 at 2, pp 7-8.)

    e) Covered trays arrived inconsistently. (See FS-11 at 1 & FS13-A.)

31. 3/28/22: Plaintiff wrote an I-60 to Ward about inconsistency of the covered trays and food being served on dirty trays. (See FS13-A.)

    a) Plaintiff presented date and time of the incident.

    b) Plaintiff wiped the dirty slot with clean toilet paper on camera. (See FS13-A & FS14-A.)

    c) FS13-B is the actual toilet paper.

32. 3/29/22, at Allred GRV dept: Defendant Ivey rejects GRV# 2022080501 as having "Inappropriate/Excessive attachments" even though the I-60 (FS13-A) was evidence. (See FS14-B.) PLEASE NOTE: This was another attempt to manipulate the GRV screening process: The I-60 was required in FS FACTS 12-13 yet excessive in 32.

33. 3/30/22: Plaintiff AGAIN wrote Defendant Ward about food being served on dirty COVERED trays. (See FS-15.)

34. March 30, 2022, at Alired GRV dept: Ivey filed GRV# 2022081196. (See FS14-A.) PLEASE NOTE: Plaintiff added instructions to save footage of the tray wiping.

35. April 13, 2022: Plaintiff's SECOND request to Glenda Adams, Allred Law Library Supervisor, for Defendant Back's information was ignored. (See FS16-A.)

36. 4/14/22, At Allred GRV dept: Hooper & Ivey acknowledged that the trays are NOT being cleaned or built properly. (See FS14-B.) Yet those same problems CONTINUED.

37. 4/18/22: Plaintiff submitted "yet another request" to G. Adams for Defendant Back's info. (See FS16-B.) It too went unanswered.

38. 4/22/22: Plaintiff sent a "3rd request" to G. Adams for the Back info, stressing it was for litigation purposes. (See FS17-A.) NO reply.

39. Same day, at Allred GRV dept: Traci Cooke LIES claiming she canNOT give Plaintiff the requested information, even though it is public knowledge NOT personal information. (See FS17-B.)

40. May 15, 2022: Plaintiff wrote a second letter to Sparkman, Ward & Wolfrum about their REFUSAL to address the ongoing deplorable and unsanitary issues with the DFH trays. (See FS-18.) No one replied.

~~41. 5/16/22: Plaintiff suffers severe abdominal cramping and diarrhea shortly after eating from a dirty tray at breakfast. (See FS20-B.)~~

41. 5/16/22, at 4:29pm at 12-A-23: Plaintiff had a stainless steel metal shaving imbedded in his bread. (See FS20-A, last paragraph.)

42. 5/17/22: Plaintiff suffers severe abdominal cramping and diarrhea shortly after eating from a dirty breakfast tray. (See FS20-B.)

43. Same day: Plaintiff again wrote G. Adams for Defendant Back's info. (See FS19-A.) Again she failed to reply.

44. May 18, 2022, at 12-A-23: Plaintiff again served breakfast on a dirty tray. (See FS20-B.)

16

yes **45.** May 18, 2022: Plaintiff's persistence pays off (see FS FACTS 35, 37, 38 & 43) as he finally rec'd the Back info. (See FS19-B, bottom.) Original in blue ink.

46. 5/19/22: Plaintiff filed GRV on continued food service violations of the Eighth Amendment. (See FS20-A.) Unsanitary practices persist.

47. May 24, 2022, at Allred GRV dept: Defendants Schroyer & Wolfrum now claim, "Every effort is made to ensure all trays are washed and sanitized between each use." (See FS20-B.)

    a) They acknowledge trays are NOT being cleaned properly.

    b) They acknowledge issues with the conditions of the trays exist due to tray transportation.

    c) This response conflicts w/ Back's definitive reply at ~~FS-D/4~~ FS8-D.

48. June 1, 2022: Plaintiff experienced stomach cramps and EXPLOSIVE diarrhea lasting 20 minutes. (See FS20-D.) Plaintiff began to fear a possible gastrointestinal illness could be involved.

49. June 19, 2022: After moving from 12-A-23 to 12-C-58, Plaintiff wrote a letter to Defendant Ward explaining issues w/ receiving CTs and the stomach discomfort-free days that coincided w/ NOT ~~receiv-~~ receiving them. (See FS-21.)

PLEASE NOTE: Plaintiff would like to use July & August of 2022 to show the Court just how often these FS violations occur and hopefully the Court will realize that there could be a thousand FACTs but won't be.

50. July 5, 2022, at 12-C-58: Plaintiff served fish square on dirty tray at lunch. (FS-22 at 1, pp 2.)

51. July 6, 2022, at Step 2: OVER FOUR MONTHS AFTER the Step 1 was answered (see FS FACT 28), Defendant Back concurs w/ the Step 1 response. (See FS10-D.)

    a) This was done DESPITE TWO other Step 1s having been filed on these same ongoing violations. (See FS FACTS 24 & 46.)

b) Also despite TWO Step 1 responses acknowledging trays were NOT being cleaned or made properly. (See FS FACTS 36 & 47.)

c) Shows Back's lack of a thorough, or even current, investigation as Plaintiff spoke to Major Ward on 2/26/22--OVER FOUR MONTHS prior to Back's response. (See FS FACT 25.)

52. 7/8/22: Salami served on DFH trays yet NOT DFH item. (See FS-22 at 1, paragraph 2.)

53. 7/9/22: Plaintiff's lunch bread soggy w/ yams: Ham & cheese casserole served at dinner yet NOT DFH item. (FS-22 at 1, pp 2.)

54. 7/10/22: Ham & cheese casserole AGAIN at dinner. (FS-22 at 1, pp 2.)

55. 7/11/22: Deficient portions of 1 fried egg & 4 prunes at breakfast. (See FS-22 at 1, pp 5.)

56. 7/11/22: Plaintiff wrote a letter to Richard Babcock, Ward & Smith pertaining to unsanitary food service conditions, deficient tray portions, and impairment of medical treatment toward DFH recipients. (See FS-22.) Please NOTE: NO ONE replied, but defendants were advised their continued inaction would result in a §1983 lawsuit.

57. 7/12/22, at 12-C-58: Plaintiff showed raw & wet pancake from breakfast to Defendant Schroyer. (See FS 24-A, last paragraph.)

58. 7/14/22, at 12 bldg medical: The health care provider, Mr. Gonzalez, found it "deeply concerning" that Plaintiff had lost 20 pounds since his last chronic care check-up. (See FS-23 at 1, pp 1-2; see also FS24-A at paragraph 1.)

59. 7/15/22: Plaintiff's lunch tray was messy w/ food spilled into other slots & soggy bread. (See FS24-B.)

60. 7/16/22: 27 raisins provided as 2 ounce breakfast fruit serving. (See FS24-B.) They ALL fit in ONE spoonful.

61. 7/17/22: DFH served COLD chicken spaghetti though NOT on menu.

62. 7/18/22: DFH fried egg tray deficient AGAIN, missing 1 egg w/ NO

18

cereal, oatmeal or grits, and ONLY 17 raisins. (See FS-23 at 1, last paragraph.

    a) Plaintiff also had grains of rice scattered about his tray.

63. Same day (7/18/22): Plaintiff wrote follow-up letter (to FS FACT 51) to Ward, sending copies to Babcock and Smith, due to the same weekly fried egg tray having deficient portions. (See FS-23; Compare FS FACT 62 portions to DFH menu--FS-27).

64. That same morning: Plaintiff found out NO OFFICER was supervising the inmates in 12 bldg kitchen at breakfast. (See FS-23 at 2, pp 4.)

65. 7/19/22: Plaintiff's hamburger patty smelled musty & mildewed.

66. July 21 & 22, 2022: 12 bldg kitchen shutdown to be cleaned, inmates feed johnnies.. PLEASE NOTE: This was the first time 12 bldg kitchen had been shutdown since May 27, 2021. (See FS-FACT 5.)

67. 7/22/22: Plaintiff filed GRv due to continued violations & deficiencies w/ the DFH trays, which caused his weight loss & impairment of medical treatment. (See FS24-A.)

68. 7/23/22, at 12-C-58: Plaintiff's pork cutlet was ALL FAT, no meat.

69. 7/24/22: DFH again served chicken spaghetti at dinner yet NOT on DFH menu. (See FS24-C.)

70. 7/26/22: NO cereal, oatmeal or grits on DFH breakfast trays.

    a) Chicken spaghetti served yet again at dinner. (See FS24-C.)

71. 7/27/22: DFH trays at breakfast missing cereal, oatmeal or grits.

72. 7/29/22, at 12-E-83: DFH served bologna & cheese casserole at dinner yet NOT a DFH item. (See FS24-C.)

73. 7/30/22: DFH served COLD bologna sandwich at dinner that was wet as if it had thawed on the tray. (~~See~~ See FS24-C.)

74. August 1, 2022, at ~~12-E-83~~ 12-E-83: Plaintiff's baked chicken lunch tray was dirty but Officer White swapped it out.

    a) Bologna & cheese casserole served at dinner on DFH. (See FS24-C.)

75. August 4, 2022: Plaintiff served rubbery fried eggs at breakfast w/ NO cereal, grits or oatmeal.

76. 8/6/22: DFH served ICE COLD pork spaghetti instead of beef meatloaf.

77. 8/7/22: After eating the bologna & cheese casserole for dinner, Plaintiff experienced food poisoning symptoms: nausea, stomach cramps, diarrhea and tiredness.

78. 8/8/22: Plaintiff served raw pancakes at breakfast.

79. Monday, August 8, 2022, at 12-E-81, Inmate Joshua Goodeau had a LIVE ROACH crawling on his lunch tray. (See FS-28; see also GRV# 2022138159 by Goodeau.)

    BE ADVISED: Officer Hart switched out Goodeau's tray yet did NOT consider the other trays in the carrier to be contaminated. (See FS-28 at 1, first paragraph.)

80. 8/9/22: Salami casserole served on DFH at last chow. (See FS24-C.)

81. 8/10/22, at Allred GRV dept: Defendants Schroyer & Reitsma entered a GRV response claiming Major Ward was personally supervising 12 bldg kitchen M-F, thus ALL of Plaintiff's food service issues were resolved. (See FS24-B.)

    a) This was a blatant LIE as NO OFFICER was overseeing the inmate staff at that time. (See FS24-C, pp 1-2.)

    b) Defendants' actions violated TDCJ policy and show D.I. to continued & worsening conditions in 12 bldg kitchen. (See Appendix-6, Code 10--Falsification of Records.)

    c) When security officers are assigned to 12 bldg kitchen they lack necessary FS knowledge & are constantly pulled for other duties.

82. 8/10/22 Bologna casserole served on DFH at dinner. (See FS24-C.)

83. Thursday, Aug. 11, 2022, at 12-E-82: Inmate Ernest Valverde was served a dinner tray with a ROACH on it. (See FS-29; see also GRV#

2022136680 by Valverde.)

84. 8/12/22: Plaintiff filed a Step 2 to GRV# 2022127596, exposing the blatant LIE tod by Schroyer & Reitsma, and continued food service violations. (See FS24-C.)

85. Same day, at 12-E-83: Plaintiff was served a tray w/ bread that was soaking wet & inedible by Officer Garry McLemore, who refused to fix the problem. (See FS25-A.) PLEASE NOTE:

    a) Officer Molone tried to eat the soggy bread but spat it out and threw the rest on the floor, proving it was inedible.

    b) Plaintiff requested that specific footage be saved. (See FS25-A from "11:17am" on.)

    c) FS25, along w/ TWO other Step 1s for this complaint (Exhibits fF & iI), has apparently vanished. (See oO-1, -2 &-3 and pP; see also FS FACT 2.)

86. Aug. 14, 2022: Inmate Joshua Goodeau attests to having had a LIVE ROACH on his tray and various food service deficiencies in an Unsworn Declaration. (See FS-28.)

87. August 15, 2022, at Step 2: Defendant Back responds some 80 days after receiving the Step 2, admitting Plaintiff's complaints DID have MERIT. (See FS24-D.)

    a) Although she acknowledged the violations and claimed "corrective action" was taken, the situation actually worsened.

    b) Back failed to follow up to ensure corrective actions were taken or to hold anyone accountable for the failure to do so.

88. August 18, 2022, at 3:36am: After another deficient breakfast tray, Plaintiff wrote a letter to Defendants Ward, Reitsma and Bryant. (See FS-26.)

    a) Plaintiff again suggests steam tables, listing the pros of putting them on-pod. (See FS-26 at 2, pp 1-4.)

b) Neither defendant replied nor were improvements made.

89. Same day: Texas State Representative Carl Sherman responded to complaint letters written in May by Inmate Goodeau pertaining to food service violations and other issues on Allred. (See FS-30.)

90. 8/19/22: At breakfast, 31 raisins provided as 2 ounce menu serving. (See FS-31.)

91. 8/20/22: DFH again served bologna casserole. (See FS24-C.)

92. 8/21/22: With no peanut butter for the DFH French toast trays, Plaintiff was provided servings of 86 raisins & 13 prunes. (See FS-31, pp2.)

93. 8/23/22: Plaintiff experienced severe diarrhea after eating beef stew for dinner.

94. 8/24/22: Raw pancakes served at breakfast.

95. Saturday, 8/27/22: MILK was served at breakfast & lunch. (See FS-31, last paragraph.)

96. 8/28/22: Syrup w/ the consistency of water served w/ French toast. (See FS-31.)

97. 8/29/22: Watered down syrup served at breakfast w/ pancakes. (See FS-31, paragraph 3.)

98. 8/30/22: 5 prunes served as breakfast fruit serving of 2 ounces. (See FS-31, pp 3.)

99. 8/31/22: Undercooked pancakes & 21 raisins served at breakfast. (See FS-31, pp 3.)

100. September 3, 2022: Plaintiff rec'd THREE dirty trays in ONE day. (See FS33-A at paragraph 2.)

101. Sept. 5, 2022: Plaintiff wrote follow-up letter (to FS FACT 88) as missing DFH items and unsanitary conditions continued, listing the dates of the deficiencies & violations. (See FS-31.)

102. Wednesday, 9/7/22, at dinner: Plaintiff's initial tray was dirty

22

so Officer Lee swapped it out. After setting the second tray on the sink and starting to eat, a baby ROACH crawled from beneath the tray. (See FS33-A, paragraph 1.)

103. 9/9/22, at Allred GRV dept: Traci Cooke & Reitsma respond to the Goodeau GRV speaking of preventative measures but mentioning NO ACTIONS taken to eradicate the current ROACH INFESTATION. (See GRV# 2022138159, Step 1 at Back.)

    a) There is NO mention of the actual hot boxes being fumigated or sprayed: otherwise johnnies would've been served for 2-3 days. (See FS FACT 5a-b.)

    b) Cooke & Reitsma D.I. to contamination & serious health risks posed by the ROACH INFESTATION.

    c) NO OFFICERS were working in 12 bldg kitchen to verify any cleaning was being done or done thoroughly.

104. Sept. 12, 2022, at Allred GRV dept: Defendants Hooper & Schroyer likewise speak of preventative measures in their response but fail to initiate efforts to eradicate the actual infestation. (See GRV# 2022136680 by Valverde, Step 1 at back.)

    a) No mention of actual hot boxes being treated to eradicate the ROACH INFESTATION.

    b) Washing hot boxes, treating food service areas, and rotating hot boxes through freezers WEEKLY are all ineffective in eliminating a ROACH INFESTATION.

    c) Defendants' actions show D.I. to serious health risks posed by unsanitary conditions.

PLEASE NOTE: The Goodeau Response does NOT mention the freezer rotation. (See FACT 103; GRV# 2022138159.)

105. 9/13/22: Plaintiff wrote an I-60 to Major Ward about food still being served on dirty trays and ROACHES still living in the hot

23

boxes. (See FS-32.) She did NOT reply.

106. September 14, 2022, at 9:30am at 12-E-83: Plaintiff spoke to Defendant Reitsma about the ROACH INFESTATION and SCC issues. (See FS33-A, second to last paragraph to end.)

    a) Reitsma's time tables did NOT match those issued in the GRV responses. (See FACTS 103 & 104.)

    b) Reitsma ADMITTED that these efforts are largely ineffective, then stated, "Roaches can survive a nuclear war, so, honestly, what can we do about it?" (See FS33-B at last paragraph.)

    c) Reitsma initially LIED before conceding that NO OFFICER had been supervising 12 bldg kitchen, contradicting his previous GRV response. (Compare FS33-A, pp4 to FS24-B and FACT 81.)

107. 9/23/22: Plaintiff submitted Step 2 due to Schroyer & Hooper's D.I. to the roach infestation and it's health risks. (See FS33-C.)

108. September 24, 2022, at 12-E-51, at 10:15am: Plaintiff asked Sgt. Brice Byrd which officer was assigned to Ad-Seg kitchen, and he replied, "[Victor] Gamboa, but he's next door (pointing toward C-pod) helping run showers. They haven't showered in a few days."

    a) At 3:04pm, Gamboa came to 12-E-50 cell w/ Lt. Barry, Sgt. Byrd and Officer Mahaffey to downgrade inmate Smalls.

    b) Gamboa returned to the pod again at 5pm.

    c) Here are THREE verifiable instances were the security officer assigned to Ad-Seg kitchen was pulled for other tasks. (See FS FACTS 20 & 81c.)

109. Sunday, September 25, 2022, at 12-E-51, at breakfast: Plaintiff had a piece of rubber in his pineapples. (See FS34-A at para 1-3.) NOTE: The actual piece of rubber is FS34-E.) yes

110 9/26/22: Plaintiff filed GRV# 2023010236 about piece of rubber in his pineapples and continued insufficient portions & missing items

(See FS-34.)

111. Same day (9/25/22): Fruit (applesauce) served on ALL DFH dinner trays.

112. 9/27/22: Prunes served on ALL DFH dinner trays.

113. Same day, at 12-E-51: Plaintiff rec'd covered trays at lunch & dinner. PLEASE NOTE: These were sent from Major Ward and are an admission that the DFH trays were/are NOT right.

114. September 28, 2022, at Allred GRV dept: TWO DAYS after the GRV was filed, Defendants Schroyer & Hooper issued a response claiming Ward would be monitoring Plaintiff's trays. (See FS34-B.)

    a) Defendants AGAIN insisted the "Trays are washed, rinsed, and sanitized between each use..." despite GRVs to the contrary. (See FS33-A, which Hooper & Schroyer answered.) This also contradicts previous admissions. (See FS34-C &FACTS 36, 47 & 81.)

    NOTE: b) Defendants ADMIT foreign objects such as "rocks, sticks, plastic, etc." are in the food. (See FS34-B, response.)

    c) Plaintiff received a covered tray at lunch, then they stopped with the issuance of the GRV response.

115. October 2, 2022: Plaintiff filed Step 1 on Defendants Schroyer & Hooper for issuing a false GRV response and failing to follow-up on their response or hold Food Service and Defendant Ward accountable. (See FS35-A.)

    a) Plaintiff presented PROOF of deficient and dirty trays, and requested the camera footage be saved. (See FS35-A, pp 3.)

    b) Covered trays suddenly picked back up the next day (10/3/22.)

116. October 4, 2022: Plaintiff wrote a letter to Defendant Ward after pancakes were served for FOUR STRAIGHT days. (See FS-36.)

117. 10/11/22: Plaintiff sent TWO separate I-60s to Defendant Ward about the covered tray inconsistency, chronicling ONGOING issues. (See FS37-A & B.)

25.

118. Same day (10/11/22) at 12-E-51, at 2:10pm: Defendant Ward came to speak to Plaintiff and ADMITTED she had been in 12 bldg kitchen & witnessed many things the kitchen workers were doing WRONG.

  a) She spoke extensively about the covered trays Plaintiff was supposed to be receiving. (See FS-38.)

  b) Admitted kitchen workers had served BAD greens that day.
  BE ADVISED: Despite Ward being in 12 bldg kitchen during lunch & prior to dinner, Plaintiff did NOT receive a covered tray at either meal. (See FS-38 at paragraph 7.)

119. On Wednesday, October 12, 2022: Plaintiff became sick, experiencing ~~after eating~~ stomach cramps, nausea, and severe diarrhea after eating a covered tray (CT) of cold chicken spaghetti at dinner. (See FS38 at 1, last paragraph.)

120. October 16, 2022: Plaintiff wrote Defendant Ward enumerating countless inconsistencies with his trays between 10-11-22 (FACT 117) an 10-16-22, including raw & incorrect foods being served and wet & soggy bread. (See FS-38.)

121. October 22, 2022, at 4:10am, at 12-C-10: Plaintiff was served a dirty tray with a 2-inch long hair under his pancakes. (See FS39-A.)

122. 10/23/22, at 12-C-10: A raw pork patty was served at lunch. (See FS-40 at 1, pp 6.)

123. Same day: Plaintiff's dinner tray had dried greens caked on it but there was NO side of greens. (See FS-40 at1, pp 6.)

124. 10/25/22, at breakfast: Fruit serving was ONE BITE of watermelon. (See FS-40 at 1, pp 7.)

125. Same day: The dinner fruit serving was BAD WATERMELON, which caused Plaintiff stomach cramps & diarrhea. (See FS-40 at 1, pp 7.)

126. 10/26/22: BAD watermelon was served at breakfast. (See FS-40 at 1, pp 8.)

127. 10/27/22: BAD watermelon was served AGAIN at breakfast. (See FS-40

at 2, pp1.)

128. 10/28/22: At breakfast, pancakes were served instead of French toast but w/out syrup, cereal, oatmeal or grits. (See FS-40 at 2, pp2.)

129. SAME DAY, at lunch: NO CT and Plaintiff's breads were SOGGY.

130. SAME DAY: Dinner was an undercooked pork patty rather than the breakfast sausage, and SEVEN French fries. (See FS-40 at 2, pp 2.)

   a) The slot of applesauce had old peanut butter in the dirty slot. (See FS-40 at 2, pp 3.)

131. Saturday, 10/29/22: The breakfast FRUIT serving was 3 prunes. (See FS-40 at 2, pp 4.)

132. Same day: NO CT at lunch resulted in SOGGY breads. (See FS-40 at 2, pp 4.)

133. 10/30/22: Plaintiff had syrup on his bread although NO SYRUP was on the DFH scrambled egg tray.(FS-40 at 2, pp 5.)

 ***PLEASE NOTE: This ONE WEEK SPAN is another example of how often the DFH trays are unsanitary and deficient, and as it is all listed in Exhibit FS-40, Plaintiff will forego innundating the Court with the rest of the deficiencies listed therein.

---

134. November of 2022: Defendant Ward began a major deviation from the DFH menu, serving grilled cheese, breakfast pizza and other items, while serving pork patties & ground pork patties in lieu of pork chops and chicken patties, yet NO NEW DFH menu was in the law library. (See Menu Diagram; see also FS-40 at 3, pp 3.)

135. November 1, 2022, at Allred GRV dept: Defendants Ivey & Hooper scold Plaintiff for requesting the GRV dept follow up on food service issues rather than ASSUMING the problems were fixed. (See FS35-B & C.)

136. 11/8/22, at 12-C-10: Plaintiff served TWO dirty trays at lunch. (See FS41-A.)

a) The covered tray, which came from the main kitchen (see FS34-B), had applesauce from breakfast on the bottom.

b) Plaintiff accepted a second tray, but the bread was in a dirty dirty slot. (See FS41-A at last paragraph.)

137. Same day: At dinner, Officer Aimee Haag allowed the SSI to handle Plaintiff's bread, which he took from a random tray, because she had forgotten to bring Plaintiff's bread, which was in a sack. (See FS41-A.)

138. 11/10/22, at Allred GRV dept: Schroyer & Hooper AVOID addressing the hair or the lack of hairnets and beard covers in 12 bldg food service. (See FS39-B.)

139. Tuesday, 11/15/22, at 12-C-10: Plaintiff received a breakfast tray w/ several clipped hairs scattered on it. (See FS-42; see also FS39-C at pp 2.)

140. Friday, 11/18/22: Inmates served johnnies for ONE DAY (ALL 3 meals) because 12 bldg kitchen was shutdown due to ROACHES.

141. Monday, 11/21/22, at 12-C-10: Plaintiff suffered TWO separate bouts of diarrhea after eating the Beef Stew at lunch and the Pork Noodle casserole at dinner.

142. Sunday, November 27, 2022, at 12-C-10: Plaintiff suffered nausea, stomach cramps and severe diarrhea after eating a covered lunch tray of chicken 'n dumplins (?).

143. 11/28/22, at lunch: Plaintiff had a piece of Brillo in his CT of ground meat. (See FS-45 at 1, pp 2-3.)

yes 144. a) The ACTUAL piece of Brillo is FS-45A.

144. Same day: Officer Chastity Cornell REFUSED to give Plaintiff his CT even though it came from Major Ward and was mandated in GRV# 2023-010236. (See FS34-B; see also FS-45 at 1, pp 4-6.) Plaintiff was NOT FED. (See FS-45 at 2, pp 2.)

145. SAME DAY, at Allred GRV dept: Schroyer & Hooper insisted trays are

cleaned and inspected prior to use despite repeated complaints of
dirty trays. (See FS41-A; See also FS-45 at 2, pp 5.) PLEASE NOTE:

  a) The defendants AVOID addressing the unsanitary food handling
     practices presented therein. (See FS41-A, last paragraph; see
     also FS-45 at 2, pp 3-4.)

  b) Plaintiff warned Schroyer of a possible lawsuit. (See FS-45 at
     2, last pp.)

  c) Defendant Ward received this same letter. (FS-45.)

146. SAME DAY (11/28/22): Inmate Kenneth Lincicome II attested, in an
     Unsworn Declaration, to various food service violations and his
     efforts to have them addressed by Defendant Reitsma, including the
     ROACH INFESTATION. (See FS-44.)

147. December 14, 2022, at 12-C-55: Plaintiff resubmitted his GRV on
     the Brillo in his food (FS45-A), along with an I-60 explaining why
     the initial submission should NOT have been rejected. (See FS46-E.)

148. Same Day, at Allred GRV dept: Despite having recently investigated
     another GRV pertaining to hair on a breakfast tray (FS39-A) on 11/10/
     22, Schroyer (& Reitsma) show their D.I. to the complaint w/ seman-
     tics (word games). (See FS43-B, Response, 2nd sentence.) NOTE:
       Obviously policy requires food service workers to wear hairnets &
       beard covers. (See FS43-C.)

149. December 15, 2022, at Step 2: Defendant Back claimed no evidence
     was found that DFH trays were served incorrect items even though
     bologna, salami, and their casseroles are CLEARLY NOT listed on the
     DFH menu. (Compare FS24A-D to FS-27, the DFH menu.)
       PLEASE NOTE: This is another OBVIOUS example of Back FAILING to
       investigate official misconduct, condoning impairment of medical
       treatment, and covering up the most BLATANT violations.

150. December 24, 2022: Officer Aaron Molone was assigned to 12 bldg

kitchen yet was doing visitation escorts as well. (See FS FACT 81c.)

151. January 1, 2023: Officer Molone, who is supposed to be the Food Service officer on 1-card 1-shift, was working as rec rover for A, C & E pods rec/showers, escorting inmates to visitation AND overseeing 12 bldg food services as well. (See FS FACTS 20, 81c, 108 & 150.)

152. Same day: Plaintiff's holiday tray, although made & checked by Charlotte Slayton FSM III, it lacked the cobbler dessert. (See FS-27, pp 3-6.)

153. 1/6/23, at 12-C-45: An undercooked pork patty was served at lunch.

154. 1/10/23: A STATEWIDE hunger strike began with paticipants on several TDCJ units: Food service practices in Allred Ad-Seg was a major issue.

155. 1/12/23: Both of Plaintiff's pancakes were RAW and so small they fit side by side in the main slot w/out overlap.

a) A dab of peanut butter provided, though nowhere near the 2 ounce serving in the menu.

156. 1/12/23, at dinner on C-pod: All trays had covers on them.

157. 1/15/23, at 12-C-45: Officer Russell Epperson grabbed two slices of bread from another tray on the carrier with his bare hand rather than walking to the hot box for Plaintiff's bread in a sack.

158. Wednesday, 1/18/23, at C-pod: ALL trays were AGAIN covered at lunch, but Plaintiff's pork patty was undercooked or partially cooked.

159. Same day, at dinner: Plaintiff's CT had mashed potatoes from lunch caked on the bottom.

160. 1/19/23: Plaintiff rec'd undercooked pancakes and a dab of peanut butter again. (See FS FACT 155.)

161. Friday, 1/20/23: At lunch, Fried chicken, biscuits and a brownie were served to seduce people OFF the hunger strike.

162. Sunday, 1/22/23 at C-pod: ALL trays were covered at lunch & dinner.

163. 1/23/23, at C-pod: ALL trays were again covered at lunch and dinner.

164. Same day: After eating the Beef Pot Pie at dinner, Plaintiff experienced stomach cramps and diarrhea.

165. Tuesday, 1/24/23, at C-pod: ALL trays were covered at lunch & dinner.

## SHORTAGE OF STAFF (SOS)
### FACTS

At ALL times herein Plaintiff was on 12 bldg in Allred Ad-Seg.

1. Monday, 1/18/21 (MLK Day): Inmate Bice was found dead & hanging in
   12-B-28 cell at approx. 2:30pm: this was the 18th day of a 30-Day
   Precautionary COVID lockdown with NO out-of-cell time.

   a) Rigor mortis had set in, which takes 4-6 hrs; full rigor mortis
      between 6-12 hrs.

   b) Plaintiff was in 12-B-12 and saw Inmate Bice when he was wheeled
      out on a gurney; rigor mortis had set in.

   c) Officers McGraw, Fields & Ms. Gellner were fired behind the
      incident because they made the shower list, ran showers, did 8:30am
      count, fed lunch, picked up the lunch trays, and counted at 12:30pm,
      meanwhile Inmate Bice was dead & hanging.

   d) This incident is PROOF that officers LIE about inmates VR'ing
      (Verbally Refusing) rec, showers and meals as records indicate
      Bice refused or accepted lunch, though he was dead.

   e) Coroner's autopsy reports indicating time of death exposed the
      falsification of records (in d), yet this is precisely why officers
      are supposed to get a verbal response from each inmate. (See Appen-

2. 2/15/21, at B-pod, Sgt. Turner & Lt. Carcamo went pod-to-pod as rec
   rovers.

3. Sunday, 4/18/21, at 12-B-12, Plaintiff was denied a shower as Officer
   Donnell ONLY ran 2 rounds of showers on 2-row. (2-out-of-7 ppl on
   each section, 12-out-of-42 on pod.)

   a) Officers regularly fail to complete showers yet claim they did.

4. Monday, 4/26/21, at 12-A-83, Plaintiff was denied a shower by Officer
   Kimberly Williams, even though he had gone to dayroom-rec and was on
   the shower list. (See SOS 1A-B.)

a) The tactic of putting inmates in their cell after rec rather than the shower, w/ promises of showering them later was used to deny shower.

b) Williams tried to do likewise w/ Inmate Gilbeaux but he had already been handcuffed and threatened to "jack the cuffs."

c) Though Williams refused to let Plaintiff shower, records will indicate she permitted 76-cell (Gilbeaux) to shower at that time, while 2-row shower was available.

d) Plaintiff provided times & requested video footage of the incident be reviewed and saved. (See SOS-1B.)

5. Monday, 5/3/21, at 12-A-83, Plaintiff deprived of rec & shower as ONLY 2 rounds (rds) of rec (20ppl) & showers (24 ppl) were run between 7:30am-5:30pm.

6. May 5, 2021, at 12-A-83, Plaintiff was deprived of a shower as ONLY 2 rds of showers were run.

7. 6/8/21, at Allred GRV Dept: Defendants Hicks & Hooper deny GRV# 2021103802, claiming, "...daily activity documentation" was reviewed w/out any indication video footage was reviewed as requested, even though they were aware of officers falsifying such records. (See SOS FACT 2d; Ex. SOS 1B.)

8. 7/9/21, at Step 2, Defendant Jessica Riley concurred w/ the Step 1 decision despite their refusal to review & save video footage and she failed to explain EXACTLY what the daily log indicated pertaining to Plaintiff's shower. (See SOS 1C-D.)

9. 7/11/21, at 12-A-9, Officer Matthew Patterson initially denied Plaintiff's rec & shower even though he did NOT offer Plaintiff rec/shower nor receive a verbal refusal from Plaintiff. After Plaintiff pointed out actual policy, Patterson relented but ONLY allowed him to shower. (See SOS-2A.)

a) Patterson used a custom rather than actual policy to VR Plain-
tiff's rec & shower. (See SOS-2A at paragraph 6; see also SOS-2C,
policy citations.)

b) Patterson knew Plaintiff's interpretation of policy was correct,
thus he allowed him to shower.

c) Plaintiff provided times for video review and retention to
support his claim. (See SOS-2A&B.)

10. 7/15/21, at 12-A-83, Officer Aaron Newell denied Plaintiff rec &
shower in direct retaliation for Plaintiff's complaint about Newell's
sexually inappropriate comments. (See SH FACT 1; see also SH-1A.)

a) Newell lied to Plaintiff claiming he had asked and knocked yet
Plaintiff did NOT respond.

b) This would have indicated Plaintiff was unresponsive and possibly
DEAD, yet Newell moved on. (See SOS FACT 1.)

c) Newell stated that Major Washington approved that method.

11. 7/23/21, at 12-A-83, Officer Newell initially VR'd Plaintiff's rec
& shower in direct retaliation for an active PREA complaint before
reversing course after Plaintiff submitted a Step 1 on retaliation
DIRECTLY to Defendant Ivey. (See SH FACT 6; SH-3A.)

12. Same day, at 12-A-83: Officers Newell & Edgar Vences ran a suicide
drill on Plaintiff's cell and only ONE other officer, Sgt. Jeffrey
Crumb responded to the ICS. (See SOS-3 at 1, paragraph 3.)

a) Although a drill, the ICS is initiated as a real emergency.

b) Sgt. Crumb told Newell & Vences, within earshot of Plaintiff, "If
this ever happens, I'ma look in the cell and if I believe the in-
mate's life is in danger I'm goin' in, so be prepared. I'm not
gonna let someone die because we didn't have enough officers
respond."

13. 7/28/21, at Allred GRV dept: UGI Hicks and Defendant T. Hooper

deny GRV# 2021134197, claiming Patterson gave everyone an opportunity
to recreate. (See SOS-2B.) PLEASE NOTE:

   a) They actually stated, "an opportunity for recreation in accord-
   ance with accepted practices," NOT POLICIES. (See SOS-2B.) This
   indicates a custom or unwritten policy was condoned by Hicks &
   Hooper.

   b) They also stated, "Inmates...must indicatetheir desire to go
   to rec when the question is put to them." This is in line with
   policy as an OFFER of rec MUST be made and REFUSED. (See SOS-2C;
   Appendix 3 at p. 19.) Yet they ignored the fact this was not done.

   c) No indication that requested video footage was reviewed/saved.

14. Same day (7/28/21), at Allred GRV dept: Defendants Hicks & Hooper
also deny GRV# 2021136682, even though the complaint indicated that
Defendant Newell was retaliating via denials of rec & showers. (See
SH-1B; see also SH FACT 7.)

   a) Despite TWO officers using similar tactics to deny Plaintiff's
   rec & showers (FACTS 9 & 10) within days of each other, Hicks &
   Hooper are deliberately indifferent to clear policy violations.

15. 8/7/21, at 12-A-83, Officer Newell VR'd Plaintiff's rec & shower.

16. 8/9/21, at A-pod: Showers were ran on first shift while rec was
run on second shift.

17. 8/16/21, at 12-A-83: Rec was ran for the pod but NOT showers.

18. 8/22/21: Plaintiff wrote a letter to Defendants O'Daniel, Mendoza
and Smith stressing the risks and dangers Ad-Seg inmates face due to
staffing shortfalls and offering a SOLUTION. (See SOS-3.) No reply.

19. 8/23/21, at Allred GRV dept: Defendants Ivey & Wolfrum deny GRV#
2021140064 despite previous complaints about Newell's retaliation.
(See SH-3B; FACTS 10 & 11.) They ignored the harassment.

20. 8/8/21, at A-pod: Major Washington came to pickup dinner trays,

**then made the shower list.**

21. 9/7/21, at 5:30 pm, at A-pod, F-section: Lt Jacob Jones came to
the pod to swap out rec.

22. Same day: Plaintiff wrote follow-up letter to Defendants O'Daniel,
Mendoza and Smith admonishing them to fix the staffing problem. (See
SOS-4.) No one replied.

    a) Plaintiff points out ignoring the problem & its risks is
       deliberate indifference. (See SOS-4, at 1, paragraph 1.)

    b) Again he offered a simple, cost-effective solution.

23. 9/8/21, at A-pod: Only 3 rds of rec/showers in 12-hour shift,
equaling MAX 30 rec/dayroom & 36 showers out of 83 inmates.

    a) Inmates left stranded in dayrooms, rec yards and showers for
       HOURS while the rover (Bienicewicz) went pod-to-pod swapping rec.

    b/c) These extended delays--stuck in shower for over an hour--used
       to deter inmates from going to rec, dayroom and shower.

24. 9/18/21, at A-pod: Lt. Christian Young went from pod-to-pod running
rec and was visibly upset about it.

25. 10/3/21, at 12-A-74: Plaintiff and others were tricked out of rec/
showers by Officer Mariah Gbolagade-Temitope, who in accented English
asked, "VR?" rather than "Rec & shower?" and Plaintiff said yes by
rote, so he accepted the denial.

26. 10/4/21: After rec, Plaintiff was denied shower by Officers Abari/yes
& Gbolagade-Temitope, then they REFUSED to call for rank as requested.
(See SOS FACT 4a.)

27. 10/8/21, at A-pod: Officer Royce Vaughn essentially turned away the
rec rover, opting to only run showers. (See SOS-6 at 1, para. 2.)

28. 10/12/21, Plaintiff wrote Defendants O'Daniel, Lumpkin and Wolfrum
about the "Ripple effect of the staff shortages," lamenting the
changes implemented by Wolfrum. (See SOS-5.) Again no one replied.

29. 10/25/21, at 12-A-74: Officer Travis Bienicewicz initially VR'd
    Plaintiff's rec & shower, though Plaintiff did NOT Verbally Refuse.
    (See SOS-6 at 1, pp (paragraph) 3.)

    a) Plaintiff objected to the denials as he did NOT VR. (SOS FACT 2d.)

    b) Bienicewicz allowed Plaintiff to shower but NOT recreate.

30. 10/29/21, at A-pod, F-section dayroom at 10:35, Officer LaTisha
    Kubiak opened the dayroom door, allowing an unknown Ghanian officer
    to place an inmate (from 12-A-61) inside while a Hispanic inmate
    (from 12-A-18) was already in there. Then the officer walked away.
    (See SOS-6 at 1, pp 4.)

    a) Once the mistake was made known to the officers, they REFUSED
       to call for rank in order to conceal their MAJOR mistake.

    b) 75 cell jacked his slot, forcing the officers to call for rank,
       though the inmate from 12-A-18 did exit voluntarily.

    c) Sgt. Ewing came to the pod and was apprised of the mistake yet
       it's uncertain if the officers were punished for the potentially
       DEADLY mistake.

31. 10/30/21, at A-pod: No rec or showers ran due to shortage of staff.

32. 10/31/21, at A-pod: One rd of rec was ran in SIX hrs (10 ppl), ef-
    fectively denying rec to the pod while NO showers were ran.

33. 11/1/21, at A-pod: After TWO days w/out rec & shower, Sgt. Ewing
    forced inmates to CHOOSE either rec or shower to limit his workload
    as he was performing pod-to-pod rec rover duties. (See SOS-6 at 1,
    pp 5-6.)

    a) This was pointed out to Defendant Wolfrum in the presence of
       Sgt. Ewing yet Wolfrum permitted the denials. (See SOS-6 at 1-2,
       pp 7-8.)

34. 11/9/21, at A-pod: Even though a rec rover was sent to run rec &
    showers, Officer Jacob Wallace ONLY ran showers. (See SOS-6 at 1, pp 2.)

35. Sunday, 11/14/21, at 12-A-17:Plaintiff spoke to Lt. William Barry
    at length about the lack of rec/showers & rec'd the usual EXCUSES.
    (See SOS-6 at 2, 3rd pp.)

36. 11/16/21: Plaintiff wrote another letter to Defendants O'Daniel,
    Lumpkin and Wolfrum about the "Continued denial of rec and/or showers"
    pointing out that the situation had NOT improved, listing numerous
    problems & their ripple effects, and admonishing them to fix them.
    (See SOS-6.)

37. Earlier, same day, at A-pod: Officer Matthew Patterson ran showers
    ONLY by himself--w/out a 2nd rover on the pod floor--and Sgt. Ewing
    was aware yet did NOT object to it. (See SOS-6 at 3, 1st pp.)

38. 11/19/21: Allred Ad-Seg switched from the 1 hour a day, 7 days a
    week schedule to the 2 hours a day, 5 days a week one, even though
    changing the schedule doesn't change the availability of staff.
    (See SOS-7A at pp 5.) This exacerbated the problem.
     a) This schedule gave EVERY POD Sundays OFF.
     b) EACH pod was OFF the day AFTER their rec day: Outside rec for
        A-section=Monday, B=Tues, C=Wed, D=Thur, E=Fri, F=Saturday.
     c) No makeup days were ran, so if NO rec was ran on your outside
        day, you still were OFF the next day as if you went to outside rec.

39. Wednesday, 11/24/21, A-pod, B-section was OFF after having outside
    rec on Tuesday, even though rec/dayroom was run for other sections.

40. November 25-27, 2021, A-pod did NOT receive rec due to staffing.

41. 11/28/21, at A-pod: Despite consecutive days w/out rec, Sunday was
    NOT used as a makeup day, yet 12 bldg had adequate staff. (See SOS-7.)
     a) A-pod started with Officers Herrera, Gbolagade-Temitope and
        Anguiano, yet Gbologade left.
     b) Anguiano ran showers by himself for the entire pod.
     c) Anguiano and Gbolagade fed lunch from 11am-noon. (See SOS-7B.)

42. 11/29/21: Plaintiff submitted GRV about the 5-day a week rec schedule worsening the lack of rec & showers. (See SOS-7A.)

43. 12/2/2021, at A-pod: Plaintiff denied rec & showers as ONLY TWO rds of rec (20 ppl) were run in NINE hours during 1st shift.

44. 12/15/21, at Allred GRv dept: Defendants Hicks & Hooper falsify documents, claiming rec & showers will be afforded per policy, despite evidence to the contrary. (See SOS-7B.)

45. 12/28/21, at A-pod: TWO shot rec were ran in TEN hours, denying Plaintiff rec & shower.

46. 12/29/21, at 12-A-82, Plaintiff spoke to Major Washington about the lack of rec & showers and the dangers posed by the staffing shortage, which he blamed on the holidays. (See SOS-10 at 3, pp 1.)

47. 12/30/21, at A-pod, E-section dayroom: Hispanic inmate in 12-A-61 had a seizure in the dayroom. (See SOS-10 at 3, pp 3.)

    a) Officers Anguiano and Lela Epps broke protocol and opened the dayroom to allow Anguiano to render aid and prevent further injury.

    b) Lt. Christian Young walked onto the pod w/ no urgency at all.

    c) Other officers trickled in with a stretcher, but valuable time had passed before 5-6 officers eventually arrived.

    d) Plaintiff was in F-section dayroom at the time.

48. January 3, 2022, en route from visit: Plaintiff was escorted by Mjr. Washington & Lt. Barry and overheard Washington chastise Barry for not doing more to ensure his shift was adequately staffed.

    a) He said Barry should be calling officers in.

    b) He said Barry should be scheduling OT in advance. to an Aco

49. 1/5/22, at 12-A-82: Plaintiff was denied shower after rec by Officer Abari, who claimed 2nd shift would shower him. (See SOS FACT 4a.)

50. 1/6/22, at A-pod, F-section, at 7:22pm: ONE TOKEN round of rec & dayroom was ran for TEN people after first shift ONLY ran showers.

51. Sunday, 1/9/22, at 12-A-82, at 10:45 am: Plaintiff spoke to Lt.
    Barry about the lack of rec & showers and the inability to produce
    adequate numbers to respond to in-cell emergencies, endangering in-
    mates & staff. (See SOS 10 at 3.)

    a) Barry admitted the staff shortage violated federal law.

    b) Barry told Plaintiff to write his State congressman and tell
    him Barry needed a raise. (See SOS-10 at 3, pp 2.)

    c) A-pod rec'd NO rec and ONE shower during Barry's 4-day card
    (from 1/9-1/12/22) due to staffing shortfalls.

52. Same day: Plaintiff wrote a letter to Lumpkin, David Blackwell and
    Wolfrum, providing a viable solution to provide video visits to Ad-
    Seg inmates and their families. (See SOS-8.)

    a) Ad-Seg inmates' families could schedule video visits but they
    were NOT granted.

    b) Even though video visits were conducted in the Ad-Seg visitation
    booths, Ad-Seg inmates were told there were NOT enough booths &
    devices available for Ad-Seg AND G4/G5 to receive them.

    c) This simple, easy-to-implement and cost-effective proposal
    would've allowed Ad-Seg inmates & families to enjoy video visits
    yet was NOT even attempted.

53. Tuesday, 1/18/22, at 12-A-82: After having OFF days on Sunday &
    Monday, Plaintiff was denied rec & showers as he would've been in
    the last shot but 2nd shift did NOT finish either.

    a) Rec & showers were supposed to run from 7am-10pm yet 2nd shift
    would ONLY put up those already at rec.

54. 1/21/22: Plaintiff submitted a GRV on the lack of rec, showers &
    safety due to staffing, and explained how the days OFF exacerbated
    the problem w/ rec/showers. (See SOS-9A.)

    a) No radio ads were broadcasting on local stations about Allred

job openings on Allred. (See SOS 9A-D.)

    b) Plaintiff requested Ad-Seg return to the DAILY rec/shower schedule. (See SOS-7B, Response.)

55. 1/25/22: Following yet ANOTHER suicide, then-Regional Director David Blackwell allegedly came to the unit. He did NOT walk thru A-pod.

56. Same day, Plaintiff wrote another letter to Lumpkin, Blackwell & Wolfrum pertaining to their deliberate indifference to the risks posed by the shortage of staff. (See SOS-10.) No one replied.

57. 1/27/22. at Allred GRV dept: Defendants Hicks & Hooper deny GRV# 2022054538, claiming, "the safety & security of this facility and the inmates & staff present will not be compromised." (See SOS-9B.)

    a) ANY TIME--which is EVERYDAY--Ad-Seg is short of staff the safety & security are compromised. (See SOS-9C, 1st paragraph.)

    b) They admit "Changing the activities schedule in Restrictive Housing will not change the availability of staff," yet they switched rec schedules on Nov. 19, 2021, knowing it would NOT fix the problem. (See SOS FACT 38.)

58. 1/30/22, at A-pod: 1-card ran rec on Sunday.

59 Same day: Placed on lockdown for shakedown until 2/8/22.

60. 1/31/22, at 12-A-26: Officer Sean Skelton, on night shift, told Plaintiff another inmate had tried to hang himself.

61. 2/8/22, at A-pod: Showers were ran before rec as rec was unexpectedly ran when lockdown was lifted.

62. 2/14/22, at 12-A-26: Even though he got on the list, Plaintiff was denied rec/shower by Officer Newell after no rec since 2/8/22, which had been the ONLY rec since 1-30-22. (See SOS FACTs 58-61 & SH-7A.)

63. 2/23/22: Plaintiff was shorted on his rec time by Officer Abari & denied a shower based on the lie that 2nd shift would shower him.

(See SOS FACT 4a.)

64. 2/24/22, at A-pod, B-section dayroom: Plaintiff asked Lt. Young which rec schedule was being used and replied, "We're just tryna get y'all some rec whenever we have enough staff."

    a) 1-card (under Young) ran rec/dayroom for 2 hrs.

    b) 2-card (under Lt. Barry) ran 1 hour shots of rec/dayroom.

65. 2/27/22, at A-pod: Plaintiff was in the last shot of rec & denied a shower by 2nd shift.

66. Same day: Plaintiff wrote a letter to Defendants Lumpkin, Black-well and Wolfrum about their liability and deliberate indifference (D.I.) in failing to fix the staffing issue. (See SOS-11.)

67. 2/28/22: A-pod rec'd rec /dayroom 6-out-of-28 days Plaintiff's denial by Newell (SOS FACT 62) and being shorted by Abari.(SOS FACT 63)).

68. 4/5/22, at 12-A-40: After 3 straight days w/out rec, Plaintiff was denied rec & shower by Officer Abari.

69. 4/13/22 at 12-A-40: ONE rd of rec was ran with NO showers.

70. 4/24/22 (Sunday): Officer Joanie Payton ran showers by herself on A-pod, w/out a second rover.

71. May 1-12, 2022: A-pod rec'd 6-out-of-12 rec/shower opportunities.

72. 5/2/22, at Step 2: H.M. Pederson responded to GRV# 2022034895, claiming every effort is made to provide rec but completely dis-regarding the inherent risks to the safety & security of the in-mates, staff and unit created by inadequate staff. (See SOS-7D.)

73. 5/6/22, at Step 2: H.M. Pederson responds to GRV# 2022054538, reiterating that Warden Wolfrum ALSO stated "changing the building schedule will not change the avaiability of staff." (See SOS-9B.) Yet despite Wardens Hooper & Wolfrum knowing that changing the rec schedule would NOT address or alleviate the denial of rec & showers,

this TOKEN move was initiated on Nov. 19, 2021. (See SOS FACT 38.)

   a) Pederson also goes on record as considering inmates' rec, showers & safety to be privileges rather than rights.

   b) Pederson is D.I. to risks to safety and security due to SOS.

74. 5/13/22: Allred Ad-Seg placed on lockdown after an Ad-Seg inmate escaped a transport bus in Centerville, Texas. (See SOS-12A.)

   a)Plaintiff read newspaper article which stated ONLY TWO transport officers were on the bus--There should've been THREE.

   b) The escapee killed several people: a direct result of the SOS.

   c) TDCJ compromised public safety by allowing that transport bus to be short of staff.

75. May 12-24, 2022: A-pod rec'd 0 rec and 5 showers over a THIRTEEN DAY PERIOD.

76. 5/31/22: Plaintiff filed GRV# 2022105837 after continued rec & shower denials in May 2022.

77. Sunday, May 29-Friday, June 3, 2022: NO REC or SHOWERS were run on A-pod for SIX STRAIGHT DAYS.

78. June 1, 2022, at A-pod: Officer Abari performed solo moves, swapping out 4 inmates, 17 & 51 cells and 16 & 38 (39) cells, which required him to pull two inmates, place them & their property in dayrooms, move the other two to the now-empty cells, etc.

   a) Abari was the ONLY rover on the pod that day.

   b) He performed moves but  A-pod did NOT receive rec or showers.

79. Same day: Plaintiff spoke to Defendant Ivey about the lack of rec & showers, and Ivey blamed it on the number of officers required for CDO (Clinical Direct Observation).

   a) In April 2022, TDCJ sent a psych program to Allred Ad-Seg despite being short of staff and knowing it would result in higher CDO numbers.

80. Saturday, June 4, 2022: Officer Lee ran A-pod showers by himself, w/ NO 2nd rover.

81. 6/5 & 6/6/22: No REC or SHOWERS were run on A-pod.

82. June 7, 2022, at A-pod: Despite TWO straight days w/out a shower and ONE shower in TEN days, Plaintiff was DENIED a shower after rec by second shift.

83..6/8/22, at A-pod: NO REC or SHOWERS, thus Plaintiff rec'd ONE rec and ONE shower in ELEVEN DAYS 5/29/22 thru 6/8/22.

84. 6/9/22, at A-pod rec yard: Plaintiff experienced heat stress symptoms while exercising as he became lightheaded and dizzy, even seeing stars and became wobbly on his feet. (See SOS-13A.)

    a) Plaintiff was stuck outside for 5½ hrs (11:45am-5:15pm) as neither officer tried to check on or communicate w/ him. (See SOS-13A.)

    b) Defendant Rasmussen REFUSED to let Abari bring Plaintiff in, even though a 2nd officer (Spriggs) was on the pod floor.

    c) Rasmussen was D.I. to health crisis, yet permitted Abari to escort an inmate for insulin by himself. (See SOS-13A, last pp.)

    d) Plaintiff was pulled out and left on the rec yard during the HOTTEST part of the day, despite being HEAT RESTRICTED. (See SOS-13A.)

85. 6/10/22, A-pod, B-section: Officer Deloris McClung tried to FORCE Plaintiff to go to outside rec despite the fact it was his sections dayroom day and he'd just suffered heat stress symptoms.

    a) Plaintiff sat on the stairs and demanded rank.

    b) Lt. Barry admitted a mistake had been made and it was NOT Plaintiff's outside day.

    c) ONLY 2 rds of rec were ran--the second lasting 3½ HOURS, meaning Plaintiff would've been stranded on the HOT rec yard again.

44

    d) Sgt. Clump admitted they had a HEAT RESTRICTION list but were not using it.

86. 6/13/22: Plaintiff was moved from 12-A-23 to 12-C-58 by Officer Starla Duke, with the help of an SSI (inmate janitor).

    a) Ms. Duke was the ONLY A-pod rover, yet she left the pod un-attended to move Plaintiff.

    b) Prior to moving Plaintiff, Duke had had to go to C-pod and bring the inmate in C-58 to A-pod, B-section dayroom to clear that cell for Plaintiff. The two inmates were swapped out.

87. 6/21/22, at 12-C-58, at 9:10am: Plaintiff spoke to Sgt. Riley about the lack of rec/showers and was told ALL the available officers were on CDO as they had 14 inmates on CDO.

    a) Riley admitted they were using one officer for every 4 inmates rather than EVERY TWO.

88. From Sunday, 6/19/22 thru 6/25/22, A-pod rec'd TWO showers and ONE out-of-cell opportunity. (See SOS-14A.)

89. For the month of June 2022, A-pod rec'd 14 showers and 9 out-of-cell opportunities, including 6/10/22 when they ONLY ran 2 rounds of rec & did NOT finish showers.

90. July 3, 2022, at 12-C-58: Per Officer Spears, ONLY NINE Ad-Seg officers showed for first shift.

    a) There are SIX pods on 12 bldg, which requires 12 officers just to have a picket officer and ONE floor officer (rover) per pod, yet each pod should have TWO rovers.

    b) TWENTY-EIGHT officers are needed to be FULLY staffed on 1st shift, meaning they were short TWO-THIRDS of their staff.

91. July 7, 2022: Plaintiff submits Step 2 (GRV# 2022105837) after Defendants Schroyer & Reitsma LIED about showers being alternated daily. (See SOS-12B & SOS-12C.), yet inmates on C-pod were repeatedly

denied showers for 2 to 3 days at a time.

92. July 7, 2022, at 12-C-58, Plaintiff denied rec by Officer Zachary White, who served as rec rover for C & D pods, as he ONLY ran 4 rds in 12 hours. (See SOS-15A.) Plaintiff went ahead and took a shower knowing 2nd shift would NOT finish rec.

93. 7/12/22: Plaintiff files a Step 2 in response to Traci Cooke and Defendant Reitsma's assertion that safety & security are the top priority when the SOS jeopardizes BOTH daily. (See SOS-14C.)

94. 7/13/22, at C-pod, at 4:45pm: Plaintiff and another HEAT RESTRICTED inmate placed on the rec yard during the HOTTEST part of the day, even though HEAT RESTRICTION rec is supposed to be ran early, in the cooler part of the day. (See SOS-13C at Bottom.)

   a) There were RECORD heat temperatures at this time, yet Allred Ad-Seg REFUSED to use the HEAT RESTRICTION LIST.

   b) Lack of outside rec deprived inmates of the opportunity to acclimate to temperatures. (See Appendix 5, AD-10.64--Excessive and Extreme Temperature Conditions in the TDCJ, p. 5 at 6.)

   c) The high was 104°F. (See SOS-13D.)

95. 7/15/22: Plaintiff filed GRV# 2022124666 on the denial of rec and the refusal of Ad-Seg to use the HEAT RESTRICTION LIST. (See SOS-15A.)

96. From Tuesday, July 19, 2022 thru Saturday, July 23, 2022, C-pod rec'd NO REC or SHOWERS for FIVE STRAIGHT DAYS.

97. 7/20/22, at 12-C-58, at 12:40pm: Plaintiff spoke to Defendant Dishman, who had recently been promoted to Major, about the lack of rec & showers and the dangers of being SOS. (See SOS-17 at 1, last pp.)

   a) Dishman admitted he had NO IDEA about how to fix the problem but was open to suggestions. "Send me an I-60 and I'll try it out."

   b) He said ALL of the OJTs were going to night shift, despite 1st

shift being unable to provide rec, showers & safety.

    c) When asked about the FAILURE to run showers even though offi-
cers are working overtime, Dishman said, "When I call people to
come work overtime I've gotta agree to let them just do escorts
or they won't come in. Once they finish escorts, they leave.
(See SOS-17 at 2, paragraph 3.)

    d) Dishman compared Allred to other units and said that at 65%
Allred had the highest staffing levels of all 2250 units.

98. Saturday, july 23, 2022: Officer Anguiano tasked with performing
rover duties between 2 pods--C & D.

99 Sunday, 7/14/22, at C-pod, E-section dayroom: Plaintiff spoke to
Defendant Reitsma about what was being done to address the staff
shortage and rec'd excuses: (See SOS-19, pp 2.)

    a) Reitsma spoke of other units with worse staffing numbers;

    b) He said, "What we need is for the tablets to come;" and

    c) Reitsma was promoted to replace Defendant Wolfrum after the
latter slapped an inmate in GP.

100. Same day: Plaintiff wrote a letter to Texas Prisons Community
Advocate pertaining to Allred's heat protocols for Ad-Seg. ~~(See 16.)~~ (See SOS-16.)

101. 7/25/22: Plaintiff filed a Step 2 after Defendants Schroyer &
Hooper failed to acknowledge risks to inmates' health & well-being
created by subjection to high temps and failure to use the heat
restriction list, permitting the dangerous practices to continue.
(See SOS-13C.)

    a) Defendants failed to review & save video footage of Plaintiff's
5½ HOURS on rec yard. (See SOS FACT 84.)

102. 7/27/22: Plaintiff wrote a SEVENTH latter to defendants O'Daniel,
Mendoza, Lumpkin, Stephen Bryant, Smith and Reitsma pertaining to
the continued deprivation of civil rights due to staffing shortfalls.

(See SOS-17.) No one responded

    a) Defendants were made aware of Plaintiff's intent to file this lawsuit. (SOS-17 at 5, last pp.)

    b) Defendants remained D.I. to civil rights violations.

103. July 26, 2022, ~~at 12-E-83~~ Plaintiff yes deprived of rec/shower when he was moved from 12-C-58 to 12-E-83.

104. For the Month of July 2022, Plaintiff saw 14 opportunities to recreate & shower, though ONE of each were lost due to a move (SOS FACT 103) and NO REC when White DID NOT FINISH (SOS FACT 92). 12 rec & 13 showers

105. August 2, 2022, at 12-E-83 yes: After TWO days w/out rec/showers, Plaintiff was deprived of rec by Officer White, even though he was in the first round of rec. (See SOS-15C & SOS-18A.)

    a) Officer White's actions were in direct retaliation for GRV# 2022124666 or SOS-15A. (See SOS-18A, last paragraph.)

    b) White intentionally put someone in 1-row shower BEFORE bring-in rec, then avoided bringing Plaintiff in first.

    c) White repeatedly promised to shower Plaintiff later. (See SOS FACT 4a.)

106. Later the same day, at E-pod, D-section: Officers White & Garry McLemore exited the section on Inmate Kevin Knight's orders and stood by and watched him defeat his handcuffs, unstrap a slingshot & spears from his leg, then shoot Inmate Dorrell Deary # 827266 TWICE through the slot of the 2-row shower door.

    a) Inmate Knight had previously speared another inmate as well as Officer Idris Balogun, yet Allred Administrators FAILED to take the necessary precautions in handling him.

    b) White failed to properly strip search Knight.

    c) White and McLemore FAILED to use pepper spray on Knight even

though he knocked White to the ground.

d) BOTH officers FAILED to protect Inmate Deary.

e) Deary had to be taken to the hospital to have the pronged arrows removed from his arm & chest.

107. From Friday, August 5 thru Friday, August 12, 2022, E-pod received ONE REC and TWO SHOWERS over a EIGHT DAY SPAN.

a) 8/5-8/8/22, 2-card did NOT run either their entire 4-day card.

b) 8/9-8/12/22, 1-card ran 1 rec & 2 showers.

108. 8/8/22, at Allred GRV dept: Defendant Schroyer attempts to mani-pulate the GRV process by screening GRV# 2022134360 as "not griev-able" because multiple issues were presented. (See SOS-18B.)

109. Same day: Plaintiff wrote letter Defendants Schroyer & Cooke de-fining "harassment" and explaining why the GRV should NOT have been rejected. (See SOS-18E.)

110. 8/9/22, at Allred GRV: Suddenly the GRV is accepted. (See SOS-18A.) This is PROOF the GRV was legitimate from the start.

111. 8/10/22; at 2nd Shift: Although assigned to E-pod, Officers Jared Hawkins & Susan Dias performed rover duties, including security checks, necessities and phone calls on Both E & F pods.

112. From 8/13 thru 8/24/22, E-pod rec'd TWO rec & THREE showers over that TWELVE DAY SPAN. (See SOS-19, paragraph 5.)

a) 8/13 rec'd rec & shower before FIVE days w/out either.

b) 8/19/22 rec/showers ran before THREE days w/out a shower & SIX w/out rec.

113. August 16, 2022, at Allred GRV dept: Defendants Schroyer & Hooper AGAIN claim, "Recreation and showers are conducted on an alternating schedule to ensure everyone gets a chance to go." (See SOS-18B.)

a) They ignored the fact that this is NOT occurring and Ad-Seg inmates were going DAYS without either. (See SOS FACTS 107 & 112.)

   b) They condoned White's retaliatory denial of Plaintiff's
      shower. (See SOS-18B.)

114. August 17, 2022, at Allred GRV dept: Defendants Schroyer & Hooper
     answer GRV# 2022124666, pertaining to the denial of Plaintiff's rec,
     claiming, "The appropriate administrative action was taken..." yet
     NOTHING changed or improved. (See SOS-15B.)

115. 8/20/22, at E-pod: Devin Cribbs was brought in to work after being
     TRANSFERRED to GP, proving he was NEEDED yet transferred.

116. 8/22/22, at E-pod: Officers Javier Aguilera came to help Russell
     Epperson feed, placing TWO rovers on the pod yet NO rec or showers
     were ran

117. 8/27/22--9/2/22: E-pod rec'd ONE rec & TWO showers in SEVEN days,
     despite the LIE told by Schroyer & Hooper. (See SOS FACT 113.)

118. For the MONTH of August 2022, E-pod rec'd 7 rec & 10 showers in
     31 days.

   a) Of it's 15 days on shift in August, 2-card ran rec TWICE &
      showers THRICE. (See SOS-19, pp. 5.) This means they were TOO
      short of staff the other TWELVE days they were on shift.

119. 9-1-22, Officer Nathan Callison served as rover between E & F
     pods, so essentially when he was on one pod the other was empty.

   a) This means that while feeding one pod the other was abandoned
      for an hour or more w/out security checks, jeopardizing the
      safety of the inmates & the security of the unit.

120. 9/5/22: Plaintiff sent copies of a letter to Lt. Barry and defend-
     ants Smith & Reitsma due to continued staff shortages, multiple
     days w/out showers, and the risks the SOS created. (See SOS-19.)

121. 9/9/22 (Friday): Unit placed on lockdown due to multiple staff
     assaults in GP and the stabbing of a female lieytenant in GP.

122. 9/14/22 at 12-E-83: Officer Nolan Stiles explained that the pod

would NOT receive rec or showers as TWO sergeants were sitting in CDO due to SOS.

123. 9/26/22 at E-pod, E-section dayroom: A TV was put in.

124. For the MONTH of September 2022, E-pod rec'd FOUR rec (before the lockdown began) and 16-showers-out-of-30, one day was ONLY 1 round.

125. For the MONTH of October 2022, Plaintiff rec'd ZERO rec and eleven shower opportunities in 31 days, w/ multiple stretches w/out.

    a) 10/5-10/8/22 FOUR DAYS w/out a shower.

    b) 10/19-10/22/22 FOUR DAYS w/out a shower.

    c) 10/24-10/28/22 FIVE DAYS w/out a shower

    d) Combining b & c Plaintiff rec'd ONE shower in a TEN-DAY-SPAN.

PLEASE NOTE: The lockdown shower schedule is M,W,F or T,Th,S and all they had to run were showers but were TOO short of staff to do that.

126. 10/17/22: Defendants Dishman & Reitsma posted a NEW shower schedule which they failed to adhere to. (See SOS-20a; SOS FACT 125b & c.) PLEASE NOTE: Despite being on record and acknowledging changing the activities schedule will NOT fix anything, they did it again knowing it would do NOTHING to address the lack of showers & staff. (See SOS FACT 57b & 73.)

127. November 1, 2022: Plaintiff wrote letter to Defendants Bryant, Smith and Reitsma due to inconsistent lockdown showers.

128. 11/4/22: Plaintiff filed GRV# 2023027853 on the continued deprivation of showers and failure to adhere to the lockdown schedule. (See SOS-21A.)

129. 11/6/22, at C-pod: Inmates forced to shower before rec because, per Defendant Hooper, "Nowhere in policy does it say it has to be AFTER rec." This came from Sgt. Zweiacker. (See SOS 22 at 2, pp. 5.) This is against policy (See Appendix 3 at p.23, K, 3.)

    a) ONLY provided 1 hour of outside rec rather than TWO per week.

a) ONLY provided ONE hour of outside rec rather than TWO per

week. (See Appendix 3, p. 18 at 1,a(1) & (2).)

130. Sunday, 11/13/22, at 12-C-10: After being FORCED to shower before

rec or VR it, Plaintiff asked Cpt. Crase why they ~~were doing that~~ *were doing that*

and Cpt. Crase replied, "Y'all are supposed to shower AFTER rec, but

I'll look into it." PLEASE NOTE:

    a) Crase was a first shift lieutenant on 12 bldg for YEARS.

    b) ONLY 1-card, 1-shift does the shower before rec, NOT 2-card.

    c) Inmates showered before rec only to be sent outside in 36°F

    weather. (See SOS-22 at 3, pp. 5.)

131. 11/18/22, at Allred GRV dept: Defendants Schroyer and Hooper state,

"Showers are being conducted on a rotating schedule," yet ignore the

fact that showers were NOT being run per any schedule. (See SOS-21A;

Compare to SOS FACT 124 b & c, which occurred AFTER SOS 20a was post-

ed. See SOS FACT 126.)

132. Same day: Plaintiff wrote letter to Defendants O'Daniel, Mendoza,

Lumpkin, Bryant, Smith and Reitsma about the "Continued deprivation

of civil rights via harassment & retaliation." (See SOS-22.)

133. 11/22/22: FORCED to shower before rec, depriving inmates of the

opportunity to ever be clean for any duration of time. (See SOS-22

at p. 3, pp 4.)

134. 11/29/22: FORCED to shower before rec.

135. ~~11/1/22~~ *yes* 11/30/22, at Allred GRV Dept: Defendant Ivey rejects GRV

despite the fact that the previous submission had been on 11/23/22.

(See SOS-~~FACT~~ *23B*; see also SOS-23E..)

136. 12/1/22: FORCED to shower BEFORE outside rec in 45°F weather.

    a) These showers were being ran at 5:30am and before rec during

    cold weather to deter inmates from going outside or to VR rec

    or showers.

137. 12/5/22, at Allred GRV Dept: Defendant Schroyer AGAIN rejects
Plaintiff's GRV despite the submission being SIX DAYS AFTER the
initial one. (See FACT 135.) 135.)

    a) This shows a deliberate attempt to manipulate the GRV process
    as a GRV that was submitted on 11/23/22 was NOT filed untill
    Monday, 11/28/22. (See FS-43A, top.)

    b) More specifically, it is PROOF that defendant Schroyer manipu-
    lated the GRV screening process as she rejected the 2nd submission
    on Monday, 12/5/22, though Monday to Monday is EIGHT days. (Com-
    pare FS-43A, top, to SOS-23B, 2nd Submission.)

138. 12/14/22, at C-pod: Officer Terrance Stevenson's last day in Ad-
Seg on 2-card, 1-shift before being transferred to GP.

    a) Stevenson was transferred after threatening to shoot up his
    entire shift.

    b) He had previously made a similar threat against Sgt. Turner
    but was intercepted en route by police and taken into custody.

    c) Yet despite repeat threats, he was TRANSFERRED, not FIRED.

139. Same day, at Allred GRV dept: Defendants Schroyer & Reitsma cite
alternate schedule in response to harassment & retaliation GRV &
claim rec & showers conducted as much as possible. PLEASE NOTE:

    a) Alternate shower schedule says NOTHING about showering before
    rec, which was clearly initiated as a deterrant. (See SOS-20a.)

    b) The response negates the fact that despite OJTs coming in,
    they were NOT properly allocated, creating a staff shortage.

140. 12/15/22, at C-pod: ONLY 1½ rounds of rec were ran as rec & showers
were ran from 7:30-10am.

    a) Prior to bringing Plaintiff in from outside rec, Officer
    Gbolagade-Temitope placed inmates in both showers yet promised
    to put Plaintiff in next.

b) Despite putting the inmates in C-52 and C-54 in from showers by 9:45am, Gbolagade-Temitope did NOT put Plaintiff in the shower. (See SOS-24A.)

141. Sunday, 12/18/22, at C-pod at 8am: Plaintiff spoke to Sgt. Kerry Hull while being escorted to shower about why Ad-Seg inmates were being FORCED to shower before rec. Sgt. Hull explained that Defendant Reitsma had told them to do it like that. (See SOS-24B.) PLEASE NOTE:

a) Ironically, after Plaintiff was returned from shower, Inmate Guzman in 56-cell asked to shower before rec and was permitted to.

b) Yet when Inmate Jericho Prince in C-53 asked to shower before rec, Ms. Gbologade-Temitope told him he had to shower AFTER rec UNLESS he was willing to forfeit his rec. (See SOS-24B.)

c) Inmates who ONLY want to shower or are OK with showering before rec are supposed to be showered FIRST, yet they obviously were NOT doing that.

142. 12/19/22: Plaintiff submitted the Step 2 to GRV# 2023040601, pointing out that although Defendant Wardens Hooper & Wolfrum had BOTH acknowledged that changing the activities schedule would NOT fix the problems, Allred Administrators keep tweeking the schedule.

143. 12/20/22 (Tuesday), at 12 bldg, C-pod: Only 10 officers showed for 1-shift, 2-card--per Officer Duke.

144. Same day, at C-pod: ONLY 3 rds of rec/showers ran: DID NOT FINISH. (See SOS-25A at pp. 4.)

145. 12/21/22, at 12-C-8: The inmate covered his cell door and hanged himself. PLEASE NOTE:

a) Although he was unresponsive, officers failed to knock down the towel to look inside or call in an ICS.

b)Even after they saw him hanging and called it in, another 10-15 MINUTES passed before they actually entered the cell.

146. Christmas Day, 12/25/22, at C-pod: ONLY 2 rounds of rec ran from 7:30-10am as Officer Black had an Officer from night shift who could ONLY work FOUR hours of OT, which forced people to take showers before rec to avoid being denied BOTH.

147. Tuesday, 12/27/22, at C-pod, D-section, at 9:55am: Sgt. Brice Byrd walked thru 2-row with Officer Gamboa and admitted that EXTRA officers had been sent to run rec & showers but he had OPTED to just run showers. (See SOS-25A, paragraph 2.)

    a) This occurred despite having an available officer in Gamboa, who was just walking around fratenizing w/ Sgt. Byrd.

148. Wednesday, 12/28/22, at C-pod, D-section, 2-row, at 8:56am: Officer escorted the psych lady while Officers Ramon Guerra and Adam Neves escorted Nurse McClain.

    a) Despite having TWO rovers on the pod and Gamboa available, no effort was made to make up for the rec missed on 12/27/22. (See SOS-25A, last paragraph.

    b) At 4:23pm, Sgt. Byrd AGAIN walked thru, this time w/ Officer Callison, proving EXTRA officers were available yet NOTHING was being run.

149. Sunday, 1/1/23, at C-pod: Officer Cribbs, who was transferred out of Ad-Seg, was brought back in to work that day, AGAIN proving he is NEEDED and should NOT have been transferred to GP. (See SOS FACT 115.)

150. Tuesday, 1/3/23, at C-pod, at Approx. 5:30pm: Officer Edgar Vances conducted THREE on-pod moves w/out a 2nd rover.

151. Sunday, 1/8/23, at Cpod: Gbolagade-Temitope & Ms. Epps ran showers at 5:30am but NO REC was ran that day. PLEASE NOTE:This was actually during SECOND or NIGHT shift as first shift does NOT start till 6:30.

152. Tuesday, January 10, 2023: A STATEWIDE HUNGER STRIKE began on Allred

and multiple TDCJ units pertaining to indefinite segregation, lack
of rec & showers, inadequate tray portions, unsanitary food service
practices, and other violations. yes

153. Same day: Brittany Robertson and members of the organization Texas
Prison Reform were set to protest and speak with legislators at the
State Capitol about the aforementioned issues.(See SOS FACT 152.)

154. Same day: A federal lawsuit was to be filed on said violations.

155. SAME DAY: Allred Ad-Seg placed on lockdown for shakedown. This was
a retaliatory move to counter the hunger strike. BE ADVISED: The
unit warden is provided ADVANCED notice of ALL impending hunger
strikes.

156. SAME DAY; at 12-C-45, at 10am:Plaintiff spoke to Lt. Carl Keener,
who said he had been prepared to run rec & showers but was told NOT
to. He admitted he did NOT know why and would look into it.

157. SAME DAY: Despite having EXTRA officers on 12 bldg to run SCC,
which is over by noon, no rec or showers were run though it was
C-pod's day. (See SOS 20a.)

    a) This was also a retaliatory move due to the hunger strike.

158. That night: 1-card, 2-shift sent officers home because they had
TOO MANY but did NOT use then to run showers.

159. Wednesday, 1/11/23: Despite C-pod having NOT rec'd a shower in
THREE days, 1-card, 2-shift AGAIN sent excess officers home w/out
attempting to run showers w/ them.

160. Thursday, 1/12/23, at C-pod: 2-card, 1-shift returned and ran ONE
round of rec before canceling it despite adequate staff, and ONLY
permitting those who went to rec to shower. (10 ppl).

161. THAT EVENING: Despite having an excess of officers and sending
some home, second shift did NOT attempt to finish showers.

162. 1/14/23: Despite FIVE days w/out a shower on C-pod (1/9-1/13/23),
yes

2-card, 2-shift AGAIN sent officers home rather than run showers.

a)a) This is clear and convincing evidence that staff has been improperly allocated to areas other than Ad-Seg 1-shift.

b) This FOUR-day stretch of sending officers home also shows deliberate indifference on behalf of the unit-level defendants as they are aware of the excess of officers. (See SOS FACT 165.)

163. 1/14/23, at around 8:30pm: Officers Swank & Shed escorted Plaintiff to the Supervisor's Officer to fill out a statement due to a complaint letter about retaliation & harassment by the Allred Administration in denying Ad-Seg inmates rec & showers. (See SOS-26.)

a) Swank told Shed that officers had been sent home the last 2 nights of their previous card. (See SOS FACTS 158-159.)

b) Despite numerous complaint letters about the shortage of staff and the denial of rec & showers, this was the first time any kind of response came from such a letter.

c) Plaintiff sees a direct correlation between the response & the hunger strike.

164. ~~164.~~ Sunday, 1/15/23, at C-pod: Despite having THREE officers (Epperson, Matthew Patterson and Chastity Cornell) on the pod and knowing Cornell was leaving at 10am, showers were ONLY ran from 9-10am, resulting in ONLY TWO rds (4 ppl on section). They did NOT FINISH.

165. Monday, 1/16/23, at 12-C-45: Plaintiff spoke to Sgt. Zweiacker as to why 2nd shift wasn't running showers since they had sent officers home on the first TWO nights of 1-card, and Sgt. Z corrected him, stating, "Four nights in a row: The last two nights of 2-card and the first two nights of our card." (See FACTS 158-159.)

a) This is PROOF that first shift administrators were aware of an excess of officers on night shift in Ad-Seg.

166. Tuesday, 1/17/23, at C-pod: Between 7am, ~~7:00~~-1:30pm ONLY TWO rounds of

rec/dayroom were ran (49 & 51 cells) as the third officer left to go to CDO. They did NOT FINISH rec & showers.

167. 1/18/23; from 12-C-45 window: Plaintiff saw Ad-Seg Officer Brittany McLaughlin working OT at the backdoor to ECB.

168. Same day: Second shift officer, McClain, worked OT pulling hunger strike participants for the nurse's check ups.

169. 1/19/23: Officer McClain again worked OT after his shift to pull hunger strike participants for the nurse. PLEASE NOTE:
   a) This shows that help is needed on first shift Ad-Seg.
   b) It also shows that officers like McClain can perform said 1-shift duties yet Ad-Seg & Allred Administrators have them on night shift.

170. January 20, 2023: LUNCH of Fried Chicken, brownies and biscuits served to entice hunger strike participants to come OFF strike. PLEASE NOTE: Fried Chicken is ONLY served during hunger strike. (See FS-4A.)

171. Saturday, 1/21/23, at 1:35pm, at 12-C-45: Plaintiff asked Defendant Hooper about the lack of staff on 1-shift Ad-Seg while 2-shift has so many people they're sending officers home, and Hooper said:
   a) New officers have to go to night shift to learn how to do things before they can be placed on 1-shift.
   b) Hooper said the officer on 2-shift should NOT have been sent home. (See SOS FACTS 158-159.)

172. Same day at 1:43pm, at 12-C-45: Plaintiff asked Defendant Reitsma why rec & showers were NOT being ran when they had extra staff.
   a) Officers Abari & Gbolagade-Temitope worked OT pulling people on hunger strike for the nurse, plus the pod rover was on the pod.
   b) Reitsma said NO REC would be ran on Saturdays as it was a day for them to get caught up on everything.

c) When Plaintiff explained that rec/showers are NOT completed
and questioned what they could possibly be "getting caught up on"
on a Saturday, Reitsma said medical, visitation escorts, etc.

d) When Plaintiff questioned this, Reitsma THREATENED to send
Plaintiff to Clemens Unit "where you'll only get out once a month."

e) Reitsma now claimed staffing at Allred was the highest of ALL
2250 units at ~~35%~~ 50%, down from the 65% he'd previously told Plain-
tiff, which Reitsma now claimed he NEVER said, stating: "65%,
we haven't been there in years!" (See SOS FACTS 97d & 99.)

173. Wednesday, January 25, 2023: Plaintiff submitted a GRV against
Defendants Hooper, Reitsma and Allred administrators for FAILING
to properly allocate staff. (See Exhibit SOS-27-A.)

174. January 1-25, 2023: C-pod received 7 rec & 9 shower opportunities
in 25 DAYS, yet 3 of those times were ONLY 1-2 rounds. (See SOS
FACTS 160, 164 & 166.)

## SEXUAL HARASSMENT (SH)

### FACTS

1. **Wednesday**, 7/14/21, at A-pod, F-section, 2-row, at approx. 4pm, Defendant Aaron Newell was asked by Plaintiff to stop making inappropriate comments towards him. (See SH-1A, GRV# 2021136682, para. 3.)

2. 7/15/21, at 12-A-83, Officer Newell VR'd Plaintiff's rec & shower in retaliation for his complaint the previous day, even though he did NOT OFFER either to Plaintiff nor did he refuse them. (See SH-1A at paragraph 5; see also SOS FACT 10.)

3. 7/16/21, Plaintiff submitted a Step 1 Sexual Harassment GRV due to Newell's retaliation and harassment for Plaintiff's verbal complaint. (See SH FACT 1.)

4. Same day, at 12-A-83, Defendant Dishman came to Plaintiff's cell door to conduct the PREA interview/investigation, which is contrary to PREA policy. (See SH-1C; see also Appendix 4--Safe Prisons/PREA Plan at p. 20, A, 1.)



   a) Dishman asked if Newell had asked him to do anything sexual, yet Plaintiff explained that Newell's comments were sexual innuendo and double-entendre.

   b) Dishman acknowledged that he knew Newell made such comments, then said, "I'll talk to him." (See SH-3A, top.)

   c) Despite the ACTIVE PREA investigation, Dishman did NOT remove Newell from A-pod or put him in the picket: instead he left Newell on the A-pod floor, enabling him to retaliate. (See SH-1C at "C. Protection from Retaliation"; see also Appendix 4 at p. 24.)

5. 7/21/21, Plaintiff wrote a complaint letter to PREA Ombudsman Cassandra McGibra pertaining to the facts that Dishman had failed to handle the investigation properly and placed Newell in position to retaliate & harass Plaintiff. (See SH-2.)

6. 7/23/21, at 12-A-83: After Newell AGAIN VK'd his rec & shower, Plaintiff filed an Emergency GRV against Newell's continued harassment & retaliation and Dishman for placing him in position to retaliate against Plaintiff. (See SH-3A; see also SOS FACT 11.))

7. 7/28/21, at Allred GRV Dept: Defendants Hicks and Hooper deny Plaintiff's PREA complaint, claiming, "Cpt. Dishman performed an appropriate investigation..." (See SH-1B.)

   a) This response was despite Dishman's "investigation" NOT being conducted per PREA policy. (See SH-1C; SH-3A.)

   b) Dishman's actions show he condoned and facilitated Newell's harassment & retaliation.

8. 7/23/21, at 12-A-83: Cpt. Kyle Kluver sent Lt. Carcamo & Sgt. Bates to pull Plaintiff for another PREA interview, yet Plaintiff refused because Kluver is a "scumbag." (See SH-3C, paragraphs 3-4; Sh-6 at 2, last 2 paragraphs.) PLEASE NOTE: Kluver is a defendant in Sanders v. Black, 7:21-cv-14, for actions that proved he is unprofessional and unscrupulous.

9. 8/6/21, at 4:34pm, Defendant Hooper signed off on an "Offender Notification Brochure," claiming Plaintiff's sexual harassment complaint was unsubstantiated. (See SH-5.) NOTE: The 7/28/21 allegation date shows that ONE DAY was used to review the investigation.

10. 8/23/21. at Allred GRV Dept: Despite continued harassment & retaliation from Defendant Newell, Defendants Ivey & Wolfrum took over a MONTH to respond, denying the Emergency GRV. (See SH-3B.) PLEASE NOTE:

   a) Defendants Dishman, Ivey & Wolfrum ALL refused to remove Newell from A-pod. (See Appendix 4, PREA Plan at 24,C,2.), stating, "Staff are assigned based on the needs of the facility, not upon request of inmates." (See Sh-3B.)

   b) Despite continued harassment, Newell was permitted to work the

pod continuously throughout the investigation, which concluded on 9/1/21,.(see SH-4, last Paragraph), working 7/29-8/1/21, 8/6-8/9/21, 8/14, 8/15 & 8/17/21.

11. 9/1/21, at PREA Ombudsman Office, Defendant Marla Norsworthy issued a DENIAL of Plaintiff's PREA complaint as "unsubstantiated."

   a) Defendant Norsworthy admitted the extent of the investigation was "The staff member was interviewed and stated, he had not made any sexual comments toward you." (See SH-4 at paragraph 2.)

   b) This is PROOF that Newell was made aware that Plaintiff had issued the complaint, resulting in the retaliation.

   c) No effort was made by Kluver or Defendants Hicks, Ivey or Dishman to interview inmates even though Newell's offensive comments are common knowledge.

   d) Plaintiff can present numerous inmates to corroborate his allegation about Newell's offensive comments yet has chosen to hold off on that to prevent retaliation. (See SH-7C at para. 5.)

12. 9/9/2021; at Step 2, Defendant Jessica Riley concurs with Step 1, claiming any further evidence supporting the allegations should be brought to the attention of the warden or Major. (See SH-1D.) She was deliberately indifferent to Newell's misconduct.

   PLEASE NOTE: Plaintiff is in Ad-Seg and can NOT procure evidence or easily conduct interviews with inmates & staff, which is the reason a staff member is supposed to investigate, yet PREA protocols & procedures were NOT followed.

13. 9/28/21, Plaintiff responded to Defendant Norsworthy's 9/1/21 PREA letter, lamenting the lackluster investigation in lieu of the retaliation and chastizing PREA for permitting such biased investigations. (See SH-6.)

14. 11/17/21, at Step 2, Defendant Riley concurs with Step 1, again

asking Plaintiff for evidence or information that was NOT presented at Step 1, yet ignoring the fact that PREA policy was NOT followed throughout the investigation. (See SH-3D.)

15. Monday, 2/14/22, at 12-A-26, Newell AGAIN harassed & retaliated against Plaintiff via denial of rec & showers even though he had gotten on the rec/shower list. (See SH-7A.)

16. 3/4/22, at ~~12 Jes~~ Allred GRV Dept: Though Plaintiff provided date & times and explained where rec should have started on Monday, 2/14/22, Defendants Ivey & Hooper failed to investigate the harassment and continued their deliberate indifference to Newell's retaliation toward Plaintiff. (See SH-7B.)

17. 7/15/22, at Step 2, Defendant Jessica Back concurs with Step 1 response despite clear evidence that Newell denied Plaintiff's rec & shower in continued retaliation for the complaint. (See SH-7D.)

INMATE REQUEST FORM

law Library-SIX-MONTH Statement
Allred

Jan.22, 2023

Original to Law Library on 1/23/23; Copy to my records

I recently submitted for a six MONTH statement, but i'll actually
need TWO: One for the Court Of Appeals, which I already ordered, and
the other for the USDC in Ft. Worth.

Thank you.


James E. Sanders    #1579328                    JA

12-C-45                                          Ad-Seg

JA

Law Library--FORMS

INMATE REQUEST FORM

1/19/23

Original to Law Library on 1/20/23: Copy to my records

Please send me TWO Statement of Inability to Pay Court Costs forms.
I need those to accompany my divorce papers and six-month statement. I
already sent TWO requests for the six-month statement, so PLEASE send
the requested forms.

Thank you.

James L. Sanders       #1579328       JA
12-A-45                               Ad-Seg

Office of the Clerk
U.S. District Court
Fort Worth

January 24, 2023

RE: §1983 suit & IFP papers

Dear Clerk:

   Please find enclosed Plaintiff's §1983 lawsuit and Application
to Proceed In Forma Pauperis minus the six-month statement. I have
enclosed copies of TWO requests forms I submitted for six-month
statements so that the Court and your office can see that I am trying
to acquire one.

   Unfortunately, our law library has been staffed with unqualified
people who have yet to be properly trained in the skills and duties
of their office. Apparently no one on the law library staff and some-
one comes to do six-month statements on unspecified days.

   Nonetheless, I will resubmit for the account statement and send it
ASAP.

                                 Respectfully,

                                   *James E. Sanders*

                                 James E. Sanders
                                 #1579328
                                 2101 FM 369N
                                 Iowa Park, TX 76367
                                 Allred



CERTIFIED MAIL

7021 2720 0000 7001 9280

U.S. POSTAGE PAID
IOWA PARK, TX
76367
JAN 20, '23
AMOUNT
$0.00
R2305T 103014-14

RECEIVED
JAN 30 2023
CLERK U.S. DISTRICT
NORTHERN DIST. TX

LEGAL MAIL

Office of the Clerk
U.S. DISTRICT COURT
501 W. Tenth St., Rm. 310
Fort Worth, TX 76102

X-RAY

PRIORITY MAIL
UNITED STATES POSTAL SERVICE
WWW.USPS.com

LEGAL MAIL

James E. Sanders
# 1579308
2101 FM-369N
Iowa Park, TX 76367
Allred Unit



PRIVILEGED OFFENDER MAIL
U.S. DISTRICT COURT
NORTHERN TEXAS
INSTITUTIONAL
DIVISION