IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | |
|---|---|
| JAMES E. SANDERS, § | |
| No. 1579328 § | |
| § | |
| Plaintiff, § | |
| § | |
| V. § | NO. 7:23-CV-009-O |
| § | |
| KRISTEN GIBSON, et al. § | |
| § | |
| Defendants. § | |

## ORDER REGARDING MOTIONS TO DISMISS

Came on for consideration the motion of Defendants Tina S. Vitolo and Bryan Reitsma, ECF No. 33, the motion of Defendant Angela N. Davis, ECF No. 55, the motion of Defendant Kristen Gibson, ECF No. 61, and the motion of Defendant Marissa Bartholet, ECF No. 62, to dismiss. The Court, having considered the motions, the responses, the reply filed by Vitolo and Reitsma, the record, and applicable authorities, concludes that the motions should be **GRANTED** in part and otherwise **DENIED**.

### I. PLAINTIFF'S CLAIMS

Plaintiff's claims arise out of his confinement in administrative segregation ("Ad-Seg") at the Allred Unit of the Texas Department of Criminal Justice. Plaintiff alleges:

Reitsma is the assistant warden of the unit; Vitolo is a program supervisor; Davis is chief of the Unit Classification Committee; Gibson is the vice chairman of classification; Bartholet is a state classification committee representative (collectively, "Defendants"). Plaintiff was placed in

1

Ad-Seg after being convicted for an escape attempt in May 2014. ECF No. 30 at 82.[1] He was "segged" for possession of a handcuff key, defeating the restraints, jacking the cuffs, and leaving a restricted area. *Id.* In February or March 2021, Plaintiff learned that his former cellmate, Keith Cook, who was segged for the same offense and had the same factors as Plaintiff,[2] had been placed in the general population, so Plaintiff hoped that he would also be released. ECF No. 1 at 15.[3] In April 2021, the State Classification Committee ("SCC") held a hearing regarding Plaintiff's placement. *Id.* The Security Detention Review Hearing Record reflects that the hearing was a 180-day hearing and that Plaintiff was a current escape risk. ECF No. 30 at 35–36. He was to remain "in current status" until October 2021. *Id.* at 36. Davis participated in the decision. *Id.*

In June and July 2021, Plaintiff wrote to Vitolo to ascertain why he was placed back on the 30-day move list after being off the list for two years. ECF No. 1 at 15; ECF No. 30 at 37. Vitolo did not respond to the first letter. ECF No. 1 at 15. He wrote again and Vitolo lied in her response, claiming that Plaintiff was never taken off the move list. *Id.*; ECF No. 30 at 38. Plaintiff wrote a third letter in July 2021, to which Vitolo responded with untrue information. ECF No. 1 at 15; ECF No. 30 at 39.

Another hearing on Plaintiff's classification status was held October 26, 2021. ECF No. 1 at 15. Plaintiff presented a written statement in favor of his release. ECF No. 30 at 42–45. Davis

---

[1] The page number reference is to "Page __ of 235" reflected at the top right corner of the document on the Court's electronic filing system.
[2] Plaintiff and Cook were the same age, serving life sentences, and not gang-affiliated. The only difference between them was that Plaintiff is Black and Cook is white. *See, e.g.*, ECF No. 30 at 51–55, 69–72.
[3] The page number reference is to "Page __ of 84" reflected at the top right portion of the document on the Court's electronic filing system.

skimmed the statement and Barthela[4] asked Plaintiff to summarize it. ECF No. 1 at 15. Bartholet told Plaintiff she could not release him from Ad-Seg; she could take the statement back to her supervisors. *Id.* at 16. The case was closed with Plaintiff remaining on the same status, the basis for the decision being "escape risk." *Id.*; ECF No. 30 at 46–47. The hearing record was signed by Bartholet, Major Todd Murdock, and Davis. ECF No. 30 at 47. Davis did not issue any type of recommendation, essentially acquiescing in Bartholet's decision. ECF No. 1 at 16.

In January and February 2022, Plaintiff sent correspondence in follow up to the October hearing, alleging that he had been discriminated against and asking for an explanation. ECF No. 30 at 48–55. Vitolo responded, claiming that race was not a "determining factor" in the decisions of the SCC but providing no plausible explanation for the disparity. ECF No. 1 at 16. She noted that Plaintiff was due for another review in April 2022 and that she would send a copy of his complaint to the committee along with information on Cook. ECF No. 30 at 55. When Plaintiff wrote to Davis seeking the correct spelling of Bartholet's name, she did not respond. ECF No. 1 at 16–17. When he wrote again, Davis simply circled the alleged correct spelling of the name. *Id.* at 17. Plaintiff made the same request of Vitolo and she did not respond. *Id.* When Plaintiff wrote to Davis again, she did not respond. *Id.* at 18.

On April 26, 2022, Plaintiff had another hearing. Gibson could not provide a plausible explanation for the difference between Plaintiff's treatment and that of his cellmate. She opted to take the file back to Huntsville for a closer look. ECF No. 1 at 18. On April 27, 2022, Plaintiff wrote to Gibson to reiterate his position that he was being discriminated against. ECF No. 30 at

---

[4] Plaintiff has now determined that the proper name of this defendant is Bartholet. ECF No. 50. The Court will use that name henceforth.

69–72. By letter dated June 11, 2022, Plaintiff inquired about the status of the hearing and Vitolo responded that Plaintiff had been remained to administrative segregation. *Id.* at 74. In later correspondence, Vitolo told Plaintiff that "SCC is remaining you, not classification." *Id.* at 75. She suggested he ask why at his next review. *Id.* On August 3, 2022, Plaintiff wrote to Vitolo and Gibson requesting to review his file. *Id.* at 76. He pointed out to Vitolo that a member of her staff sat on Plaintiff's review committee, so it did not make sense to say that he was being detained in Ad-Seg by SCC. *Id.* Neither responded and he was not allowed to review his file. ECF No. 1 at 19–20.

On September 7, 2022, Plaintiff wrote to Reitsma and others making the specific comparison between himself and his cellmate and their current situations, noting that the only difference between them was that his cellmate was white and Plaintiff is Black. ECF No. 30 at 83–84. The next day he submitted a step one grievance requesting release from Ad-Seg. *Id.* at 85–86. A restrictive housing committee hearing was set for the week of September 15, 2022. *Id.* On September 14, Plaintiff spoke with Reitsma, who advised Plaintiff to direct his questions to the SCC. Doc. 1 at 21. On September 15, Plaintiff's SCC hearing was held. Reitsma was on the panel, but made no recommendation. *Id.* at 21–22. Another panel member stated that Plaintiff was doing everything he should be doing for release. *Id.* at 21.

Plaintiff wrote to Vitolo on September 27 and October 3, regarding falsification of paperwork but got no response. ECF No. 1 at 22. On October 19, 2022, Plaintiff spoke to Reitsma about his lack of a recommendation and Reitsma told Plaintiff that he only gave a recommendation if asked by SCC for one. *Id.* at 23. On November 4 and 15, Plaintiff received correspondence from Vitolo notifying him that SCC had not ruled. *Id.* Plaintiff continued to correspond with Vitolo in

January 2023, and she told him SCC had not ruled.

Plaintiff seeks declaratory and injunctive relief. He also seeks compensatory and punitive damages. ECF No. 1 at 11–13.

## II. GROUNDS OF THE MOTIONS

Defendants maintain that to the extent Plaintiff asserts claims against them in their official capacities, the Court lacks subject matter jurisdiction. With regard to the claims against them in their individual capacities, Defendants maintain that Plaintiff has failed to state a claim under 42 U.S.C. § 1983. Further, they each assert entitlement to qualified immunity.

## III. OFFICIAL CAPACITY CLAIMS

Suits against state officials in their official capacities are suits against the state. *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985). The Texas Department of Criminal Justice, for which Defendants work, is an arm of the State of Texas and entitled to sovereign immunity. *Valentine v. Collier*, 993 F.3d 270, 280 (5th Cir. 2021). The law is clear that 42 U.S.C. § 1983 does not contain a waiver of sovereign immunity. *Quern v. Jordan*, 440 U.S. 332, 345 (1979). Nor has the State of Texas voluntarily waived sovereign immunity for claims brought under § 1983. *Texas A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 839 (Tex. 2007). Thus, to the extent Plaintiff seeks damages from Defendants in their official capacities (and it does not appear that he does, ECF No. 49 at 2), the Court lacks subject matter jurisdiction over those claims. To the extent he seeks prospective injunctive or declaratory relief, he is not so barred. *See Verizon Maryland, Inc. v. Public Serv. Comm'n*, 535 U.S. 635, 645 (2002); *Ex parte Young*, 209 U.S. 123, 159–60 (1908); *Aguilar v. Tex. Dep't of Crim. Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998).

## IV. INDIVIDUAL CAPACITY CLAIMS

### A. Due Process

To state a cause of action under 42 U.S.C. § 1983, a plaintiff must allege that (1) some person has deprived him of a federal statutory or constitutional right, and (2) that person acted under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Arnold v. Williams*, 979 F.3d 262, 266 (5th Cir. 2020); *James v. Tex. Collin Cnty.*, 535 F.3d 365, 373 (5th Cir. 2008). He must specify the personal involvement of each defendant. *Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992). Supervisory officials are not liable for the actions of subordinates under a theory of vicarious liability. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987). Each government official is liable only for his or her own misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).

In this case, Plaintiff is proceeding with two claims: violation of Due Process and racial discrimination arising out of his confinement in Ad-Seg. The threshold requirement of a due process claim is the government's deprivation of a liberty or property interest. *DePree v. Saunders*, 588 F.3d 282, 289 (5th Cir. 2009), *abrogated on other grounds*, *Sims v. City of Madisonville*, 894 F.3d 632 (5th Cir. 2018); *Moore v. Miss. Valley State Univ.*, 871 F.2d 545, 548 (5th Cir. 1989). As a general rule, an inmate does not have a liberty or property interest in his custody classification. *Butler v. Porter*, 999 F.3d 287, 296 (5th Cir. 2021); *Moody v. Baker*, 857 F.2d 256, 257–58 (5th Cir. 1988). However, extraordinary circumstances may give rise to a constitutional claim where an inmate is confined in segregation for an extended period of time and denied interaction with other humans. *Butler*, 999 F.3d at 296. Citing *Butler* and *Escobarrivera v. Whitaker*, No. 21-30147, 2022 WL 17352178 (5th Cir. Dec. 1, 2022), the Court allowed Plaintiff to proceed with this claim.

6

ECF No. 14 at 2.

Defendants admit that from a durational standpoint, Plaintiff meets the test for a due process claim, having been confined in Ad-Seg for over nine years. However, they urge that his conditions are not severe enough to implicate due process concerns. *See Butler*, 999 F.3d at 296 (citing *Wilkinson v. Austin*, 545 U.S. 209, 223–24 (2005) (being prohibited from almost all human contact, having the lights on 24 hours per day, exercising only one hour per day in a small room were sufficiently severe); *Escobarrivera*, 2022 WL 17352178, at *4 (being in a cell with bars instead of a steel door, having the opportunity to communicate with other inmates, and having access to visitation twice a month was not sufficiently severe). Here, based on the facts pleaded by Plaintiff and the documents he has attached, his conditions arguably meet the test at this stage. He has alleged facts to show that his confinement is excessively harsh when compared to those in the general prison population.

Defendants argue that Plaintiff cannot proceed in any event because his own pleading shows that he has received regular reviews of his Ad-Seg confinement in which Plaintiff has had an opportunity to be heard and to present evidence on his behalf approximately every 180 days. ECF No. 1 at 15–23; ECF 30 at 35–36, 46–47, 103–04. Further, that he has not prevailed does not mean that he was denied due process. *See Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005) (a prisoner has no federally-protected interest in having grievances resolved to his satisfaction).

To determine what process is due, the Court considers three factors identified by the United States Supreme Court, namely: (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and (3) "the

Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Wilkinson v. Austin*, 545 U.S. 209, 224–25 (2005) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). With regard to the first issue, in a case like this one, where Plaintiff has been held in Ad-Seg for over nine years in conditions alleged to be extreme compared to other inmates, his interest is more minimal. *Compare Hope v. Harris*, 861 F. App'x 571, 580 (5th Cir. 2021); *Hoyt v. LeBlanc*, No. 20-865-JWD-EWD, 2023 WL 6118544, at *3 (M.D. La. Aug. 28, 2023), *adopted*, 2023 WL 6096750 (M.D. La. Sept. 18, 2023). Given Plaintiff's description of the hearings, the risk of an erroneous deprivation is high. *Hoyt*, 2023 WL 6118544, at *4–5. And, since the government interest at stake is the ability to continue to hold Plaintiff in Ad-Seg without more meaningful review, the interest is low. *Id.* (Although the State's "first obligation must be to ensure the safety of the guards and prison personnel, the public, and prisoners themselves," *Austin*, 545 U.S. at 227, there is no contention that Plaintiff poses any risk here as he has not had any infractions in a number of years.)

The Fifth Circuit has recognized that the periodic review process Texas employs to determine whether an inmate should be kept in segregation satisfies the constitutional requirements of the Fourteenth Amendment. *Hope*, 861 F. App'x at 581; *see also Striz v. Collier*, No. 3:18-CV-202, 2020 WL 7868102 (S.D. Tex. Nov. 24, 2020) (noting that TDCJ policies allowing the UCC to make recommendations to the SCC regarding placement and removal of SPD codes, as well as the ability of the unit warden and others to make requests regarding an inmate's removal from AD-Seg, provide additional procedural protections), *aff'd*, 2022 WL 1421834 (5th Cir. 2022), *cert. denied*, 143 S. Ct. 408 (2022). However, in this case, Plaintiff has pleaded facts to show that the periodic review process actually employed does not satisfy the constitutional requirements because

8

no meaningful review is ever provided. Though there are three members of the committee reviewing Plaintiff's placement in Ad-Seg, the local members never contribute to a decision. They only make a recommendation if asked. Further, the committee itself appears to have no authority since the file is always taken back to unidentified supervisors in Huntsville for a decision. Those persons never sign a decision. No plausible reason for the decisions to remain Plaintiff is ever given although Plaintiff is entitled to know the factual basis for the review committees' decisions. Rote repetition of the reason for his continued segregation as the same reason he was initially placed in Ad-Seg effectively denies Plaintiff any possibility of release. In addition, Plaintiff has at least raised issues as to the classification of Plaintiff as "Escape Risk (ES), the falsification of paperwork, and failure to timely deliver results of the periodic hearings.

### B. Discrimination

The central purpose of the Equal Protection Clause is the prevention of official conduct discriminating on the basis of race. *Washington v. Davis*, 426 U.S. 229, 239 (1976). To state a claim for violation of the Equal Protection Clause, Plaintiff must allege that a state actor intentionally discriminated against him because of his membership in a protected class. *Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir. 1999). He must allege that he received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from discriminatory intent. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 227 (5th Cir. 2012); *Wheeler v. Miller*, 168 F.3d 241, 252 (5th Cir. 1999). Discriminatory intent may not be imputed from one defendant to another. *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 534 (5th Cir. 1997). Here, all Plaintiff has alleged is that he is Black and his former cellmate is white. He has not alleged that the same hearing panels treated the two of them differently. *See, e.g., Lee v. Kansas City S.*

*Ry.*, 574 F.3d 253, 259 (5th Cir. 2009) (employees with different supervisors are generally not deemed to be similarly situated). He has not even alleged the race of the persons involved in the decisions. There may be any number of reasons the two were treated differently. Plaintiff himself apparently did not think there was a discriminatory reason until his sister raised the issue. He has not alleged facts to show that any Defendant intentionally discriminated against him. Thus, the equal protection claim will be dismissed.

V.   **QUALIFIED IMMUNITY**

Qualified immunity insulates a government official from civil damages liability when the official's actions do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). For a right to be "clearly established," the right's contours must be "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Individual liability thus turns on the objective legal reasonableness of the defendant's actions assessed in light of clearly established law at the time. *Hunter v. Bryant*, 502 U.S. 224, 228 (1991); *Anderson*, 483 U.S. at 639-40. In *Harlow*, the Supreme Court explained that a key question is "whether that law was clearly established at the time an action occurred" because "[i]f the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." 457 U.S. at 818. In assessing whether the law was clearly established at the time, a court is to consider all relevant legal authority, whether cited by the parties or not. *Elder v. Holloway*, 510 U.S. 510, 512 (1994).

In this case, the Court is satisfied that the law was clearly established that an inmate in Plaintiff's position has a liberty interest and must be afforded due process, that is, meaningful review. *See Wilkerson v. Stalder*, No. 00-304-JJB, 2013 WL 6665452 (M.D. La. Dec. 17, 2013), *aff'd*, 774 F.3d 845 (5th Cir. 2014). *See also Wilkerson v. Stalder*, 329 F.3d 431, 434 (5th Cir. 2003) ("No reasonable officer could believe that such confinement for an extended period of time . . . was not atypical under Supreme Court and Fifth Circuit standards").

## VI.   CONCLUSION

Defendants' motions to dismiss are **GRANTED in part** and **DENIED in part**. Plaintiff's equal protection claim is **DISMISSED**. The motions are otherwise **DENIED**.

The Court **DETERMINES** that there is no just reason for delay in, and hereby **DIRECTS**, entry of final judgment as to the dismissal of the equal protection claim.

**SO ORDERED** this **14th day** of **November, 2023**.

_____
Reed O'Connor
**UNITED STATES DISTRICT JUDGE**

11