**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**WICHITA FALLS DIVISION**

| | | |
|---|---|---|
| **JAMES E. SANDERS,**<br>**No. 1579328** | § | |
| **Plaintiff,** | § | |
| **V.** | § | **NO. 7:23-CV-009-O** |
| **KRISTEN GIBSON, et al.** | § | |
| **Defendants.** | § | |

**MEMORANDUM OPINION AND ORDER**

The United States Court of Appeals for the Fifth Circuit remanded this action for the Court to consider on an individual basis whether Plaintiff, James E. Sanders, alleged facts sufficient to overcome the claims of qualified immunity of Defendants Kristin Gibson, Bryan Reitsma, Marissa Bartholet, Angela N. Davis, and Tina S. Vitolo. ECF No. 96. The matter was stayed pending an interlocutory appeal, which has now been resolved, and the parties have made their filings regarding qualified immunity.[1]

## I. PLAINTIFF'S CLAIMS

As set forth in the Court's order regarding motions to dismiss, ECF No. 68, Plaintiff's claims arise out of his confinement in administrative segregation ("Ad-Seg") at the Allred Unit of the Texas Department of Criminal Justice. The operative pleading is Plaintiff's complaint, ECF No. 1, as supplemented by his June 7, 2023 response and addendum, ECF No. 30. Plaintiff alleges:

---

[1] Because Plaintiff's pleadings are extensive and he knows them better than anyone, the Court ordered that he identify by document number, page number, and (if applicable) paragraph number each of the facts he has pleaded with regard to each Defendant sufficient to overcome that Defendant's entitlement to qualified immunity. ECF Nos. 97, 126. Plaintiff made his filing, ECF No. 127; Defendants filed their response, ECF No. 128; and, Plaintiff filed his reply, ECF No. 130.

Reitsma is the assistant warden of the unit; Vitolo is a program supervisor; Davis is chief of the Unit Classification Committee; Gibson is the vice chairman of classification; Bartholet is a state classification committee representative (collectively, "Defendants"). Plaintiff was placed in Ad-Seg after being convicted for an escape attempt in May 2014. ECF No. 30 at 82.[2] He was "segged" for possession of a handcuff key, defeating the restraints, jacking the cuffs, and leaving a restricted area. *Id.* In February or March 2021, Plaintiff learned that his former cellmate, Keith Cook, who was segged for the same offense and had the same factors as Plaintiff,[3] had been placed in the general population, so Plaintiff hoped that he would also be released. ECF No. 1 at 15.[4] In April 2021, the State Classification Committee ("SCC") held a hearing regarding Plaintiff's placement. *Id.* The Security Detention Review Hearing Record reflects that the hearing was a 180-day hearing and that Plaintiff was a current escape risk. ECF No. 30 at 35–36. He was to remain "in current status" until October 2021. *Id.* at 36. Davis participated in the decision. *Id.*

In June and July 2021, Plaintiff wrote to Vitolo to ascertain why he was placed back on the 30-day move list after being off the list for two years. ECF No. 1 at 15; ECF No. 30 at 37. Vitolo did not respond to the first letter. ECF No. 1 at 15. He wrote again and Vitolo lied in her response, claiming that Plaintiff was never taken off the move list. *Id.*; ECF No. 30 at 38. Plaintiff wrote a third letter in July 2021, to which Vitolo responded with untrue information. ECF No. 1 at 15; ECF No. 30 at 39.

---

[2] The page number references to ECF No. 30 are to "Page __ of 235" reflected at the top right corner of the document on the Court's electronic filing system.

[3] Plaintiff and Cook were the same age, serving life sentences, and not gang-affiliated. The only difference between them was that Plaintiff is Black and Cook is white. *See, e.g.*, ECF No. 30 at 51–55, 69–72.

[4] The page number references to the complaint are to "Page __ of 84" reflected at the top right portion of the document on the Court's electronic filing system.

Another hearing on Plaintiff's classification status was held October 26, 2021. ECF No. 1 at 15. Plaintiff presented a written statement in favor of his release. ECF No. 30 at 42–45. Davis skimmed the statement and Barthela[5] asked Plaintiff to summarize it. ECF No. 1 at 15. Bartholet told Plaintiff she could not release him from Ad-Seg; she could take the statement back to her supervisors. *Id.* at 16. The case was closed with Plaintiff remaining on the same status, the basis for the decision being "escape risk." *Id.*; ECF No. 30 at 46–47. The hearing record was signed by Bartholet, Major Todd Murdock, and Davis. ECF No. 30 at 47. Davis did not issue any type of recommendation, essentially acquiescing in Bartholet's decision. ECF No. 1 at 16.

In January and February 2022, Plaintiff sent correspondence in follow-up to the October hearing, alleging that he had been discriminated against and asking for an explanation. ECF No. 30 at 48–55. Vitolo responded, claiming that race was not a "determining factor" in the decisions of the SCC but providing no plausible explanation for the disparity. ECF No. 1 at 16. She noted that Plaintiff was due for another review in April 2022 and that she would send a copy of his complaint to the committee along with information on Cook. ECF No. 30 at 55. When Plaintiff wrote to Davis seeking the correct spelling of Bartholet's name, she did not respond. ECF No. 1 at 16–17. When he wrote again, Davis simply circled the alleged correct spelling of the name. *Id.* at 17. Plaintiff made the same request of Vitolo and she did not respond. *Id.* When Plaintiff wrote to Davis again, she did not respond. *Id.* at 18.

On April 26, 2022, Plaintiff had another hearing. Gibson could not provide a plausible explanation for the difference between Plaintiff's treatment and that of his cellmate. She opted to take the file back to Huntsville for a closer look. ECF No. 1 at 18. On April 27, 2022, Plaintiff

[5] Plaintiff determined that the proper name of this defendant is Bartholet. ECF No. 50.

wrote to Gibson to reiterate his position that he was being discriminated against. ECF No. 30 at 69–72. By letter dated June 11, 2022, Plaintiff inquired about the status of the hearing and Vitolo responded that Plaintiff had been remained to administrative segregation. *Id.* at 74. In later correspondence, Vitolo told Plaintiff that "SCC is remaining you, not classification." *Id.* at 75. She suggested he ask why at his next review. *Id.* On August 3, 2022, Plaintiff wrote to Vitolo and Gibson requesting to review his file. *Id.* at 76. He pointed out to Vitolo that a member of her staff sat on Plaintiff's review committee, so it did not make sense to say that he was being detained in Ad-Seg by SCC. *Id.* Neither responded and he was not allowed to review his file. ECF No. 1 at 19–20.

On September 7, 2022, Plaintiff wrote to Reitsma and others making the specific comparison between himself and his cellmate and their current situations, noting that the only difference between them was that his cellmate was white and Plaintiff is Black. ECF No. 30 at 83–84. The next day he submitted a step one grievance requesting release from Ad-Seg. *Id.* at 85–86. A restrictive housing committee hearing was set for the week of September 15, 2022. *Id.* On September 14, Plaintiff spoke with Reitsma, who advised Plaintiff to direct his questions to the SCC. Doc. 1 at 21. On September 15, Plaintiff's SCC hearing was held. Reitsma was on the panel, but made no recommendation. *Id.* at 21–22. Another panel member stated that Plaintiff was doing everything he should be doing for release. *Id.* at 21.

Plaintiff wrote to Vitolo on September 27 and October 3, regarding falsification of paperwork but got no response. ECF No. 1 at 22. On October 19, 2022, Plaintiff spoke to Reitsma about his lack of a recommendation and Reitsma told Plaintiff that he only gave a recommendation if asked by SCC for one. *Id.* at 23. On November 4 and 15, Plaintiff received correspondence from

Vitolo notifying him that SCC had not ruled. *Id.* Plaintiff continued to correspond with Vitolo in January 2023, and she told him SCC had not ruled.

## II. ISSUE TO BE DETERMINED

The sole issue to be determined is whether Defendants are entitled to qualified immunity.

## III. APPLICABLE LEGAL PRINCIPLES

### A. Pleading

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Its purpose is "to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and ellipsis omitted). To survive a motion to dismiss for failure to state a claim, the facts pleaded must allow the Court to infer that the plaintiff's right to relief is plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To allege a plausible right to relief, the facts pleaded must suggest liability; allegations that are merely consistent with unlawful conduct are insufficient. *Id.* In other words, where the facts pleaded do no more than permit the Court to infer the possibility of misconduct, the complaint has not shown that the pleader is entitled to relief. *Id.* at 679.

In considering a motion to dismiss for failure to state a claim, the Court may consider the complaint in its entirety, as well as documents incorporated by reference. *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011). The Court may not consider new factual allegations made outside the four corners of the complaint. *Morgan v. Swanson*, 659 F.3d 359, 401 (5th Cir. 2011); *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008).

**B. Qualified Immunity**

Qualified immunity insulates a government official from civil damages liability when the official's actions do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). For a right to be "clearly established," the right's contours must be "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Individual liability thus turns on the objective legal reasonableness of the defendant's actions assessed in light of clearly established law at the time. *Hunter v. Bryant*, 502 U.S. 224, 228 (1991); *Anderson*, 483 U.S. at 639-40. In *Harlow*, the Supreme Court explained that a key question is "whether that law was clearly established at the time an action occurred" because "[i]f the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." 457 U.S. at 818. More recently, the Supreme Court has clarified that the "violative nature of the *particular* conduct [must be] clearly established." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015).

When a defendant relies on qualified immunity, the burden is on the plaintiff to negate the defense. *Kovacic v. Villareal*, 628 F.3d 209, 211–12 (5th Cir. 2010); *Foster v. City of Lake Jackson*, 28 F.3d 425, 428 (5th Cir. 1994). The standard is demanding. *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015). Although Supreme Court precedent does not require a case directly on point, existing precedent must place the statutory or constitutional question beyond debate. *White v. Pauly*, 580 U.S. 73, 79 (2017). That is, the clearly established law upon which the plaintiff relies should not be defined at a high level of generality but must be particularized to the facts of the case. *Id.* Thus, the failure to identify a case where an officer acting under similar

circumstances was held to have violated a plaintiff's rights will most likely defeat the plaintiff's ability to overcome a qualified immunity defense. *Id.* at 79–80; *Surratt v. McClarin*, 851 F.3d 389, 392 (5th Cir. 2017).

If public officials of reasonable competence could differ on the unlawfulness of the defendant's actions, the defendant is entitled to qualified immunity. *Mullenix*, 577 U.S. at 11; *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *Fraire v. City of Arlington*, 957 F.2d 1268, 1273 (5th Cir. 1992). A mistake in judgment does not cause an officer to lose his qualified immunity defense. Rather, the qualified immunity defense protects "all but the plainly incompetent or those who knowingly violate the law." *Hunter*, 502 U.S. at 229 (quoting *Malley*, 475 U.S. at 343). Further, that the officer himself may have created the situation does not change the analysis. That he could have handled the situation better does not affect his entitlement to qualified immunity. *Cass v. City of Abilene*, 814 F.3d 721, 731–32 (5th Cir. 2016); *Young v. City of Killeen*, 775 F.2d 1349, 1352–53 (5th Cir. 1985). And, "an allegation of malice is not sufficient to defeat immunity if the defendant acted in an objectively reasonable manner." *Malley*, 475 U.S. at 341.

## IV. ANALYSIS

For the reasons previously discussed, the Court is satisfied that Plaintiff has pleaded facts to establish a liberty interest in his conditions of confinement. ECF No. 68. That is, the duration and conditions of confinement in Ad-Seg give rise to a right to periodic review of his assignment. The question is whether he has pleaded facts sufficient to establish that each Defendant would have known (because every reasonable officer would have known) that what he or she was doing in regard to the reviews of continued Ad-Seg violated Plaintiff's constitutional rights. And, in sum, the Court cannot conclude that Plaintiff has met his burden.

First, the facts he has pleaded are sparse as to each Defendant. As to Bartholet, he relies on the allegations of "Fact 7" in the complaint. ECF No. 1 at 15–16. In sum, On October 26, 2021, Plaintiff appeared at a hearing and presented a statement in favor of his release from Ad-seg, which Barholet asked him to summarize. She stated that she could not release him from Ad-Seg but could take his statement back to her supervisors. She closed the case, leaving him in Ad-Seg. The other matters to which Plaintiff refers are not facts pleaded. In particular, the allegation that Bartholet falsified documents is new.[6] In any event, Plaintiff has not cited to any case establishing that anything Bartholet did or failed to do constituted a violation of his constitutional rights.

As for Davis, Plaintiff relies on review hearings held April 27 and October 26, 2021. ECF No. 127 at 2. He alleges that he was not permitted to attend or participate in the April 27 hearing due to COVID concerns but fails to point to any pleaded allegations that would support liability against Davis as a result. As for the October review, he cites to Fact 7a (Barthelot's statement that she could take Plaintiff's statement back to her supervisors but could not release him) and says that Davis "did NOT issue a vote/recommendation NOR a dissenting opinion." ECF No. 127 at 3. Rather than cite to other pleadings, he gives examples of Davis's alleged dishonesty. *Id.* As with Bartholet, he makes the claim that Davis falsified documents but cites no pleading to that effect. He does not cite any authority establishing that anything Davis did or failed to do violated his constitutional rights.

With regard to Gibson, Plaintiff cites "Facts 23, 24, 26, 27, 33, 46, 47, 48 & 49." ECF No. 127 at 3. He bases his claims against her on her participation in the April 26, 2022 hearing and her position as vice chairperson of classification. Specifically, at the April 26, 2022 hearing, Gibson

[6] The document to which he refers is not signed by Bartholet in any event. ECF No. 127 at 1 (citing ECF No. 30 at 35).

could not provide Plaintiff a plausible explanation for his continued segregation. ECF No. 1 at 4 (Fact 23). On April 29, 2022, Plaintiff wrote Gibson a letter to which she did not respond. *Id.* (Fact 26). On August 3, 2022, he wrote a letter to Gibson requesting paperwork and to review his classification file and she failed to respond. *Id.* at 5–6 (Fact 33). The other cited facts do not mention Gibson; the arguments made are not supported by references to the pleading.[7] He fails to show that based on these limited facts Gibson knew that she was violating Plaintiff's constitutional rights.

As for Reitsma, Plaintiff refers to "Facts 40, 43, 44, 52, 54 & 57." ECF No. 127 at 6. He also refers to a grievance response signed by Reitsma reflecting that review was complete and the allegations not sustained. *Id.* at 7 (citing ECF No. 30 at 102). He refers to offender notifications that do not appear to be pertinent. *Id.* (citing ECF No. 30 at 103, 105, 108). He also refers to a letter he sent to others recapping events. *Id.* at 8 (citing ECF No. 30 at 116). Again, these allegations do not establish that Reitsma "knowingly and willingly falsified state documents and participated in a sham." *Id.* at 8. Nor do they establish a knowing constitutional violation.

Of all the Defendants, Plaintiff cites to the most facts pleaded with regard to Vitolo. ECF No. 127 at 8–10. The Court understands Plaintiff's contention to be that Vitolo, as the highest ranking member of unit classification at the Allred Unit, knew what was going on, i.e., that his rights were being violated, but failed to do anything about it. Because members of her staff sat on each review committee, she was aware of the sham nature of the reviews. *Id.* at 8. Yet, he also alleges that she placed information regarding the different treatment of Keith Cook in Plaintiff's

---

[7] The cites to the supplemental pleading are to letters Plaintiff wrote to others. *E.g.*, ECF No. 127 at 5 (referencing ECF No. 30 at 114–15).

file. *Id.* at 9. In any event, although he alleges that Vitolo failed to take corrective action, he does not cite to any authority establishing her duty or responsibility to take a particular action.

## V. CONCLUSION

For the reasons discussed, the motions to dismiss are **GRANTED**; Defendants are entitled to qualified immunity; and, Plaintiff's claims against them are **DISMISSED**.

**SO ORDERED** this **18th day** of **November 2026**.

Reed O'Connor
CHIEF UNITED STATES DISTRICT JUDGE